## SANDERSON ROBERT v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY.

1. Contracts for life insurance are not contracts of indemnity, like those of fire or marine insurance; they are agreements on the part of the insurer to pay a prescribed sum, no more and no less, if the person whose life is insured shall die within the time for which the risk was taken.

2. The premium to be paid on life insurance is always paid, or secured to be paid, in advance. If there is a failure to pay at the time, when by the terms of the policy it is to be paid, the risk is at an end.

3. When, by the terms of the policy, a portion of the annual premium is to be paid in advance, and the residue in six months; and a note is taken for the deferred payment, a failure to pay the note at maturity defeats the policy, so that if within the year, but after the note became due and was unpaid, the life should terminate, no claim can be set up against the insurer; his liability no longer exists.

SPECIAL TERM.—This action was brought upon a policy of insurance, issued by the defendant, on the life of George W. Sessions. The policy stated that, in consideration of ninety dollars and forty cents paid by the assured, and of a like sum to be paid on the 22d day of February in every year during the continuance of the policy, the life of Sessions was insured for seven years from the 22d day of February, 1855. There were these conditions in the policy: "In case the premium shall not be paid to said company on or before the time herein mentioned for the payment of the same, then, and in every such case, said company shall not be liable for the payment of the sum insured, or any part thereof; and this policy shall thereupon cease and be forfeited." "In case of this policy becoming null and void, the holder of the same will not be entitled to a return of any part of the premium paid thereon." "This policy, and any sums that shall become due thereon from said company, for loss, or for distribution, or for return of premium, are pledged and hypothecated to said company, and they have a lien thereon, to secure the payment of any premium, or part thereof, on which credit may be given, and of any note or security given, or to be given, to said company therefor; and on non-payment of any such premium, or such note or security, or any part thereof, when due, all claim on this policy shall be forfeited to said company, and the policy shall be void."

It appeared, from the evidence, that when application for the insurance was made, which was by a printed form used by the company, there was written in the application, by the assured, these words: "Premium payable semi-annually in advance." A policy was issued upon the payment, in

cash, of $45.20, and the giving of a note for a like amount, stating that it was for premium on the policy, and payable on the 22d of August, 1855, with interest from its date, which was the date of the policy. On this policy there was an indorsement by the agent in Cincinnati, of the fact that a premium note for $45.20 had been taken, and also a like sum paid in cash. The policy, so indorsed, was returned, to have an alteration made in it, at the request of the assured, which alteration was as to the interest of the plaintiff, Robert. Another policy, with the desired alteration, was delivered by the agent in Cincinnati, to the assured, and there was an unintentional omission to make the indorsement as to the premium note. This policy was the one on which the action was brought.

The note for $45.20, due on August 22, 1855, was not paid, and this note still remaining unpaid, and there having been neither a demand of payment nor an offer of payment, George W. Sessions died on November 15, 1855, and notice of his death was given to the agent on the 20th.

There was evidence on the part of the defendants, that about August 9, 1855, notice of the day the note became due was given to the maker. It was claimed, on the other side, that no such notice was ever received, and evidence was given to show that the agent was mistaken. There was evidence on the part of the plaintiff, showing that it was usual, in Cincinnati, to place notes in bank for collection, and that it was the custom of the banks and bankers to notify the makers of the time of their maturity.

It appeared from the evidence, that the note for $45.20, from its date to November 20, 1855, had remained in the keeping of the agent of the company, in Cincinnati; and, except the evidence as to giving notice of its becoming due, there was nothing to show that anything had been done in reference to it before the death of Sessions. After his death, on November 20, 1855, the plaintiff offered to pay the amount of the note to the agent in Cincinnati, which he declined to receive. On the policy was a statement, or

notice, that no agent of the company was authorized to waive any forfeiture.

The action was submitted to the court.

*Tilden, Rairden & Curwen,* for plaintiff.

*Coffin & Mitchell* and *Kebler & Force,* for defendant.

GHOLSON, J. Before proceeding to examine the particular circumstances of this case, it is proper to consider the clauses of the policy, having reference to the premiums to be paid to the company. The first clause is clearly intended to show the amount of the premiums and the times they are to be paid. The second clause on the subject clearly provides that if a premium be not paid at the time mentioned in the policy, the company shall be no longer liable, and the policy becomes void. The third clause as clearly provides that when the policy becomes void, and the liability of the company upon it ceases, there shall be no right in the holder of the policy to claim or recover any part of the premium before paid. This clause was intended to apply to the case where a premium had been paid and the policy became void before the time provided for the payment of another premium. It might, but for this clause, have been claimed that the consideration having failed in part, there should be a proportionate return of the premiums. No such claim could be made as to premiums before fully earned. As to them, such a provision was unnecessary, and the terms of the clause are limited to *any part of the premium* before paid, meaning the current premium then being earned. The last clause on the subject of premiums is intended to provide, generally, for circumstances having relation to the giving of credit for any premium, or part thereof; the particular circumstances under which credit may be given not being described, but left to an arrangement between the parties. There are two general objects apparent: First, the securing a lien on the policy, and on

any sums becoming due thereon for the payment of any premium, or part thereof, on which credit may be given. Secondly, to make the continuance of the policy depend on the payment of any premium, or part thereof, for which credit had been or might be given, when the same became due.

As has been suggested, the system of credits the company had adopted, either generally or in the particular instance, is not specified in the policy. If credit was given for the first premium, or a part of it, the mode and time were not thereby fixed as to any subsequent premium, and might be changed by the parties. Indeed, there is nothing in the policy which at all makes it obligatory on the company to continue to give credit for the future premiums, though it might have been given for the first. The clause, then, being general in its terms, and intended to apply to different and differing circumstances, it is not necessary that every part of the clause should have meaning and effect as to the acts of the parties in the particular case. As the credit was given, a portion of the clause might have no meaning. By a change in the mode of giving credit, or an extension of the time of credit, its proper meaning might appear. The clause is in the nature of a fundamental law, intended to apply to such cases as might come within the purview, and to the extent only that they might be embraced. It does not necessarily apply, in all its parts, to every case in which credit is given for a premium, or a part thereof. For example, the portion of the clause securing a lien on the policy, or on any sums of money becoming due thereon, might be operative in some cases and not in others.

It is quite clear that the last clause on the subject of premiums, embraces within its terms, the present case. The conclusion most obviously presented by all the circumstances of the case, and upon a fair construction of the contract is, that there was a giving of credit for a part of the premium. The whole premium was not paid in cash;

for one half of it a credit was given, and a note taken for the amount. The clause, in express terms, provides that if any note given to the company for a premium, or a part thereof, shall not be paid, when due, all claim on the policy shall be forfeited to the company, and the policy shall be void. The contingency for which provision was thus made, happened. A note was given for a part of the premium; it became due during the life of the assured, and was not paid.

It is claimed, on the part of the plaintiff, that the recital in the first clause of the policy, that the premium for the first year had been paid, is conclusive, and precludes the defendant from showing that there was a giving of credit for a part. It is claimed that if a note was received, it must be considered as having been received as a payment. Without examining into the various decisions upon this subject, I think there are several satisfactory reasons why no such claim can be sustained in this case. The rule would not, certainly, apply to a case where, at the time the policy was delivered, there was an indorsement upon it showing the truth, that half the premium had been paid and a premium note given for the other half; nor would it apply where a policy so indorsed, had been returned to be altered in a matter for the benefit and accommodation of the assured, and another policy with the alteration, being substituted, and, by mistake and accidental omission, no indorsement was made. There is another reason equally satisfactory to my mind why there is no estoppel in this case. The very instrument containing the recital claimed as the estoppel, also shows upon its face, that, notwithstanding the recital, the existence of the other matter is contemplated, and the right to show the truth is reserved. The last clause expressly refers to " any *note* or security *given*, or to be given" for the premium, or any part thereof. Why refer to a note given at the time of the delivery of the policy unless the fact, if it existed, that such a note had been so given might be shown? There is still another reason, which,

as it has a bearing upon another point, it is proper to state. The execution and delivery of the policy and the making and delivery of the note, were simultaneous acts, were parts of the same transaction, and as to the point of dignity, as contracts, stand in law on the same footing, neither being under seal. Now the note, on its face, expressly shows the consideration for which it was given, "being in part of premium on policy No. 5237, of said company, on the life of George W. Sessions." Thus, in direct terms, negativing the conclusion that the whole premium had been paid, and in as direct terms, bringing the note itself within the provisions of the last clause, as a note given for a part of a premium, and therefore a premium note within the meaning of that clause. Here it is proper to observe, that the terms of the note that it was for a part of the premium, meaning, undoubtedly, the first annual premium of $90.40, together with the fact that interest is charged on the amount of the note from date, shows that it was not the contract of the parties that the premiums were to be paid semi-annually. The apparent proposition so to pay, contained in the application, was either not assented to by the company, or more probably was understood as a request that a credit of six months, according to the conditions in the policy, should be given for one-half of each annual premium; and this request, as to the first premium, was granted, and the policy and note accordingly executed and delivered.

According to the view of the case which has been presented, the defense of the defendant must be made good upon the breach of the condition as to the non-payment of the note given for a part of the premium; and the plaintiff must show, either generally or under the circumstances of this case, upon some principles of law or equity, a right to recover notwithstanding that breach.

As a general rule, when the terms of a contract between parties are ascertained, what those terms require is the law of the case and must determine the rights involved. If the terms of the contract violate no law or principle of public

policy, and have been assented to upon an adequate consideration, and without fraud or duress, it is a principle of the common law that there should be an exact and strict compliance.    13 Ohio, 79–83, *Easton* v. *Pa. & Ohio Canal Co.;* 5 Denio, 326–329, *Egan* v. *Mut. Ins. Co. of Albany;* 3 Hill, 161–162, *Beadle* v. *Chenango Co. Mut. Ins. Co.;* 2 Denio, 75–84, *Jennings* v. *Chenango Co. Mut. Ins. Co.*

To the strict and rigorous rule of the common law, as to the construction and enforcement of contracts and conditions, an exception has been established by which relief is given, in certain cases upon principles of equity, against penalties and forfeitures.    In some cases, this relief has been obtained in a court of law; in others, an application to a court of equity has been required.    In what cases and under what circumstances this relief would be afforded in equity, has been a subject of no little discussion.

"There is no branch of the jurisdiction of equity more delicate than that which goes to restrain the exercise of a legal right.    That jurisdiction rests only upon this principle, that one party is taking advantage of a forfeiture."    "Equity will relieve where a penalty is forfeited, if the case admits of a certain compensation; and the true foundation of the relief is, that when penalties are designed only to secure money, or damages really incurred, if the party obtains his money or damages, he gets all that he expected or required." The principle is not confined in its application, to breaches of covenants for non-payment of rent.    "It is still, however, in all the cases, a forfeiture or penalty which is in question." 2 Johns. Ch. 526–535, *Skinner* v. *Dayton.*    "It is said, that in all cases of penalty or forfeiture, equity will relieve, if compensation can be made and the default be only in time.    The true ground of relief in such cases, is to be found in the intention of the parties.    Where, from the nature of the agreement, the penalty is only intended as a security that the consideration shall be performed, a court of equity may relieve; for, notwithstanding they do so, they give the party that

which he stipulated to receive, and therefore no injury is done; but where the relief would destroy the substance of the contract, as if the thing stipulated be a collateral act, relief can not be granted, for no precise value can be affixed to such an act." 1 Ohio, 14, 20, *Hutcheson* v. *McNutt.*

It will have been observed from the statement of the principle in the authorities quoted, that it is .the intention of the parties which is to be looked at, to ascertain whether, in a particular case, there be a proper ground for relief; whether the case be one of the exaction of a forfeiture, or the relief, if granted, would destroy the substance of the contract, according to the real intention of the parties? And this intention is to be ascertained from the nature of the agreement rather than from the language of the contract. 16 Mees. & Wels. 354; *Price* v. *Green.* Of this, the cases as to liquidated damages present an obvious illustration. Parties can not, by any particular phraseology, turn what is properly a penalty into liquidated damages. 5 Cowen, 150, *b*, *Spencer* v. *Tilden.* It will be observed that in one of the authorities, the case of a collateral act, as to which no value can be fixed, is put as an example merely, and does not exclude the idea that there may be cases where no relief can be obtained when there has been a breach of a covenant for the payment of money at the specified time. That there are such cases, is shown by the authorities; 2 Story's Equity, §1325; 13 Ves. 433, 434, *Sparks* v. *Pro. Liv. Water Works;* 1 Russ. & My. 506, 4 Cond. Eng. Ch. 533. *Davis* v. *Thomas.* But without inquiring now into their character, or the principle on which they rest, I proceed to the direct question, whether there can be relief against the prescribed consequence, in a policy of life insurance, of the non-payment of the premium at the time it becomes payable, according to the contract between the parties.

It is difficult (looking at the clauses in the policy) to see any clear distinction, as regards relief in equity, between the non-payment of an annual premium at the stipulated time, and the non-payment of a premium, or part thereof, for

which credit had been given. If, for example, the company had given credit for one-half of the premium for a year, then the second annual premium, as well as the part for which credit had been given, would become due at the same time. Why should a different rule apply? Was it not the intention of the parties, and is it not the nature of the agreement, that they should stand on the same ground? Indeed, the counsel for the plaintiff, during the argument, was understood to claim that relief would be proper in either case, interest for the delay being sufficient compensation as well in one case as in the other, and if there be nothing in the nature of the agreement to show that this would not be so, the conclusion seems just.

I shall, therefore, inquire, in the first place, as to the ordinary annual premium, in a life policy, whether its non-payment at the stipulated day really forfeits any further right, or whether the condition requiring such payment is a mere penalty, as to which relief will be given on the payment of interest, and this though, while the premium remained unpaid, the assured died? To the proposition thus generally and simply stated, there can, I think, be but one answer; and, until it was presented in the examination of the case, I had never supposed there could be any doubt but that, from the very nature of the contract of life insurance, the prompt and punctual payment of the premiums was of the very substance of the contract.

An attempt was made, in an early case, to assimilate the conditions in a life policy, requiring the payment of the premium, to the condition annexed to a deed conveying real estate. But the court said that the analogy did not hold, and that the rules applicable to conditions with respect to lands did not apply. "This is a contract of assurance, and must be construed according to the meaning of the parties, expressed in the deed or policy." 12 East, 183, *Want, et al.* v. *Blunt.*

From the nature of the contract for life insurance, it appears to have been considered that the annual premium not

being paid, to authorize a recovery something must have taken place subsequently between the parties, which would amount to a new contract. 12 East, 183; 7 Mees. & Wels. 150, *Acey* v. *Fernie;* 8 Georgia, 534, *Mut. Life Ins. Co.* v. *Ruse.* Of this, the subsequent receipt of the premium, and other acts, might be proper evidence. 18 Barb. 541, *Buckbee* v. *U. S. Ins. A. & T. Co.;* 27 Eng. Law and Eq. 140, *Wing* v. *Harvey.* But, in the absence of any such acts, no case can be found, at law or in equity, in which a recovery was enforced.

There is, however, to my mind, a still stronger reason why, as to the ordinary annual premium in a life policy, there can be no relief in case of its non-payment on the day specified. The contract is of the description which is termed unilateral. To have it continue from year to year is in the nature of a privilege, secured by the agreement of the company. It may be waived or abandoned by the party, and the company has no right to thrust it upon him without his consent, expressed in the mode and at the time appointed, and the very nature of the business of the company requires that they should know, at the time, whether their agreement is to continue. The principle upon which relief has been refused, in the case of a privilege of purchase, fully applies. 1 Russ. & My. 506, *Davis* v. *Thomas.*

It remains, in the next place, to consider whether the condition in the policy, as to a premium note, stands on the same footing as that in relation to the annual premium; and it is upon this point of the case alone, as to which I have found it difficult to come to an entirely satisfactory conclusion. On the one hand there are conclusive considerations applying to the annual premium, which do not apply to the premium note, particularly that just mentioned, the want of any mutuality of contract, in the one case, and its apparent existence in the other. On the other hand, the well understood condition that the prompt payment of premiums was necessary to continue the existence of the policy, and the reasonable conclusion that it was the intent of the parties, as expressed in the clause as to credit, only to waive partially

and temporarily this payment, retaining in full force the condition. In other words, providing in such a case as the present, substantially, though not in form, for semi-annual premiums.

I have considered several collateral questions as tending to throw light on the principal one, and among others, whether, on the non-payment of the premium note, the company, had they elected so to do, might have maintained an action for the amount, and so enforced the continuance of the contract until the end of the year. With a view to this question, a case recently decided in Indiana has been called to my attention; 5 Ind. 170, *Ind. Mut. Ins. Co.* v. *Conner.* That was the case of a fire policy, and a premium note had been given. The risk was ended by a sale of the property insured. The court held that the consideration of the premium note, up to the date of the sale, was good, and it having been paid in that proportion, there could be no recovery for the balance. This case, it will be readily seen, is not entirely applicable to the present. There the claiming to recover on the note would not affirm and continue the risk; here it might have that effect. The principle decided, however, appears to be important and just. It is the principle before adverted to, and in reference to which one of the clauses of the policy appears to have been framed—the one which provides that there can be no recovery back of a premium paid, when the policy has become void. This clause would not enable the company to recover money for a consideration which had failed.

Having regard to this principle, it would appear to place the company in this position—either that there was no right to recover on the note (in other words, that the obligation upon the policy and note had both ceased), or that some act of election must be made, either to affirm or disaffirm the continued existence of the obligation, both on the note and the policy; and until such act of affirmance or disaffirmance, if made within a reasonable time, the obligation on each side might be considered as still continuing. Now, an act of

affirmance, or disaffirmance, and particularly the latter, if requisite, could only be performed by a personal demand, or something equivalent. At least, it must require some act to be in some form communicated to the other party. Is there any reason to suppose that the rights of the party not in default in this case, and secured by the express provision of the agreement, depend on the performance of any such act, and remain in abeyance until it is performed ?

The well-established principles of law impose no such burden. I do not find that the maker of a note is entitled to notice or demand in any form. He is " bound to pay," without notice, to whomsoever may happen to be the holder, on the precise day when it becomes due. If he places himself in a situation of hardship, from the difficulty of finding out the holder, it is his own fault; 2 Mees. & Wels. 223, *Poole* v. *Tumbridge.* When there is a covenant to pay a sum of money, in gross, on a day certain, it is incumbent on the covenantor to seek out the person to be paid, and pay or tender him the money, and for the simple reason that he has contracted so to do; 8 Exch. 689–696, *Haldane* v. *Johnson;* and it has been held, that where a condition is annexed, by will, to a devise or bequest, and no one is bound to give notice of such condition, the parties must themselves take notice, and perform the condition, in order to avoid a forfeiture;" 10 Ves. 246, note; 2 Atk. 619, *Chauncy* v. *Graydon.*

The question whether the company was bound to do any act in disaffirmance of the contract will, at last, be found to depend on the intention of the parties, as shown by the nature of the agreement, and to resolve itself into the general question under consideration. As a general rule, a condition in a policy not complied with, defeats it, and no act is required on the part of the company; 1 Phil. on Ins., ch. 9, 410 ; 2 Denio, 75–84 ; 7 Wend. 270, *Fowler* v. *Ætna Ins. Co.* I have found no authority which establishes an exception in the case of a condition as to the non-payment of a premium note. There is one case which would appear to show that there is no exception; but, being a case at law, it is not conclusive as to the point

under consideration. It was the case of a fire policy issued by a mutual company for five years. Premium notes had been given, upon which assessments were payable thirty days after notice; and the policy provided that in case of the non-payment of any assessment, the policy was thenceforth null and void. An assessment was made and not paid; and, a loss occurring, the non-payment of the assessment was set up as a defense to the action. The court said: "The parties may insert what conditions they please in a policy, provided there be nothing in them contrary to the criminal law, or public policy. This is constantly done in marine policies, and the principle extends to all other policies;" 3 Hill, 161, *Beadle* v. *Chenango Co. Mut. Ins. Co.* The court, in this case, appear to place a condition as to the payment of premium notes upon the same footing as other conditions usually contained in policies.

If the breach of such a condition is a good defense at law, the absence of any case in which relief has been given in equity, upon the general ground of the jurisdiction to relieve against forfeitures, is a forcible objection to the propriety of extending that branch of the jurisdiction to such cases. After much reflection on the subject, there are, to my mind, serious objections to any such relief in this case upon the principles which appear to have been established upon the subject, and which have been before stated.

The contract of life insurance is one of a peculiar nature. The company, for example, is called on, in this case, for the consideration of ninety dollars and forty cents, to pay eight thousand dollars. If such demands are enforced, as they undoubtedly may be, when there has been a compliance with the terms of contract, in what mode is the loss to be made up unless by the receipt of premiums, and the judicious investment and use of the money received? It is very justly said, in the printed form of the application of the company, which is a mutual insurance company, that "the stability and permanency of such a company, depends: 1. Upon an adequate premium being demanded. 2. Upon

its being paid, or sufficiently secured, so that the company shall not run a risk on lives any further than each one contributes his just proportion to the funds of the company." To carry out and enforce this principle is, in my opinion, the object of the clause which, in effect, makes the continuance of any interest in the funds dependent on a strict compliance with the obligation as assumed, to contribute to them. I can not resist the conclusion that the prompt payment of the premium is of the substance of the agreement, in a contract of life-insurance, and that this principle applies as well to the case of a premium for which, in favor of the assured, a credit has been given, as to any other.

Such being the principle applicable to the case, in my opinion, there is nothing in the fact of a note being given and being retained by the company, which forbids its application. On the contrary, taking the policy and the note together, as one and the same transaction, which it would still more properly be, had the indorsement been made, I think it might be very fairly claimed that, upon the non-payment of the note, being for a definite part of the current annual premium, and the consideration, by the terms of agreement, ceasing, the company could not have enforced its payment.

It has not escaped my observation, that the note is made payable to order; but it could not be negotiated, and there could have been no intention that it should be negotiated, so as to be clear of the condition in the policy upon which its consideration depended. For that consideration, and its connection with the particular policy, is clearly shown on the face of the note, and it could not be taken without full notice. The fact that this statement appears on the note, and that there was, or should have been an indorsement of the receipt of the note upon the policy, is, as has been before suggested, strongly significant to show that it was the intention of the parties to carry out, in substance, the proposition which, in fact appears to have been made, that a semi-annual premium should be paid.

It has been claimed for the plaintiff, that if, upon the

general grounds of the jurisdiction in equity to relieve against forfeiture there can be no relief, still, there are special and particular grounds upon which it may be granted. I have already made observations on the point as to notice of the time the note became due, and endeavored to show that there was no right to require or expect notice. I do not find, in this case, that there have been, on the part of the company, any acts of waiver. If the agent had done any acts of that description, no authority for them from the company has been shown. That he had no such authority was notified to the assured by an indorsement at the foot of the policy.

Upon a full view of the whole case, on its merits, I feel bound to come to the conclusion, that there must be a finding for the defendant.

Judgment for defendant.