COLUMBIAN RELIEF FUND ASSOCIATION *v.* HOPPER.

[No. 2,834.    Filed May 24, 1899.    Rehearing denied Feb. 20, 1900.]

BENEFICIAL ASSOCIATIONS.—*Sick Benefits.*—*Failure to Pay Dues.*—
*Forfeitures.*—A certificate of membership in a beneficial association
provided that if the monthly dues were not paid by the third day of
each month the member should be suspended, and should not be
entitled to benefits.    In answer to questions in the application the
insured stated the amount of his weekly wages, and agreed that
the amount of his weekly indemnity should not exceed the amount
of his average weekly wages.    The insured became sick while in
good standing, and the association became indebted to him for sick
benefits accrued in excess of his monthly dues.    *Held,* that the fail-
ure of insured to pay his dues after he became sick did not forfeit
his right to benefits, since it was the duty of the association to apply
the accrued benefits to the payment of the dues of the member.

From the Floyd Circuit Court.    *Affirmed.*

*W. H. Latta, C. L. Jewett* and *H. E. Jewett,* for appel-
lant.

*H. M. Dowling, C. D. Kelso, J. V. Kelso* and *J. Foley,*
for appellee.

WILEY, J.—It is averred in the complaint that appellant
is a "Social and Insurance Company," and that one object
of the association is to render pecuniary aid to its mem-
bers when they become sick, provided such sickness is not
caused by their own misconduct, etc.    It further appears
from the complaint that appellant issued to appellee, who
was plaintiff below, a certificate of membership January 15,
1896, and at that time he paid $2.60, $2 of which was the
membership fee and sixty cents for dues to February 1,
1896; that by the terms of the certificate the dues to be
paid by appellee were $1 per month, to be paid in advance
on the first day of each month; that he paid the successive
monthly dues, including the July, 1896, payment; that on
July 22, 1896, he became sick; that his said sickness was

not caused by his own misconduct or imprudence; that he continued sick for twenty-six consecutive weeks; that by the terms of said certificate he was entitled to be paid by appellant, during such sickness, after the first week thereof, $10 per week as sick benefits; that such sick benefits began to accrue July 29, 1896; that on August 1, 1896, he did not pay his monthly dues, because he was unable, by reason of his sickness, so to do; and for the further reason that on said day appellant owed him for sick benefits then accrued a sum in excess of said dues.

The issues were joined by an answer and reply, but as no question is discussed as to the sufficiency of the pleadings we need not refer to them further. Upon a proper request therefor, the court made a special finding of facts and stated its conclusions of law thereon, and rendered final judgment for appellee. The only question discussed by counsel arises under the second and third specifications of the assignment of errors, which challenge the conclusions of law. A proper consideration of the question necessitates a brief statement of the facts found, and they are as follows: That on January 14th appellee made a written application for membership in appellant association; that on the following day appellant issued to him a certificate of membership; that the monthly dues of $1 should be paid on or before the first day of each month, and, if not paid by the third of each month, the member should be suspended from membership and from receiving any and all benefits; that from and after January 15, 1896, continuously to and including July 1, 1896, appellee paid his regular dues; that on and after August 1, 1896, appellee did not pay appellant any dues; that on July 21st appellee became sick, and so remained continuously until December 30, 1896, being a period of twenty-six weeks; that on August 1, 1896, appellee was financially unable to pay his dues, and so remained until December 30, 1896; that appellant, by reason of said certificate of membership, is liable to appellee according to

the terms of the contract, and in no different manner; that on August 27, 1896, appellant tendered appellee, in legal tender money of the United States, $2.86, in payment of any claim which he had, or might have or assert against appellant, which appellee refused to accept; that when this action was commenced appellant immediately paid to the clerk for the use and benefit of appellee said sum of $2.86, and that the same has remained in the hands of said clerk ever since; that appellee has performed all the conditions of the contract certificate to be performed by him, and so complied with the same until he became delinquent as hereinbefore found; that by the terms of his certificate of membership appellee was required to pay appellant on or before the third day of each month the sum of $1, and that the sum of $2.86 was the amount which accrued as sick benefits between July 28th and August 3rd, 1896, when appellee made default in the payment of his dues; that appellee was indebted to appellant August 1, 1896, in the sum of $1; that on July 30, 1896, appellee mailed to appellant a notice of his sickness, which appellant received the following day. As conclusions of law, the court stated: (1) "That the plaintiff [appellee] did not on the 3rd day of August, 1896, become, and was not thereafter, suspended from membership, and from receiving any and all benefits of membership in the defendant [appellant] association." (2) "That the defendant [appellant] is indebted to the plaintiff [appellee] in the sum of $250, and that the plaintiff ought to recover judgment therefor against the defendant." Appellant's motion for a new trial was overruled, and judgment rendered in harmony with the findings of fact and conclusions of law.

The sole question discussed and for decision is: Did appellee become delinquent and forfeit his membership, and hence his right to sick benefits, by his failure to pay his dues on or before August 3, 1896, while appellant was indebted to him for sick benefits accrued? Appellant urges that

though sick benefits had accrued to appellee in an amount exceeding the monthly dues, yet, his failure to pay the $1 as stipulated forfeited his membership, and that in consequence thereof it was not liable to him for sick benefits in excess of the amount accrued to August 3, 1896. And appellant further argues that it had no right to apply to the payment of appellee's dues any of the money in its hands which had accrued to appellee as sick benefits. On the other hand, appellee contends that appellant's liability to pay him sick benefits became fixed and determined on the 28th day of July, 1896, and continued throughout appellee's sickness, without the payment of monthly dues during the time of his sickness.

In construing contracts of insurance such as the one before us, it is the duty of the court so to construe them as to give them effect and force, and to construe them most strongly against the insurer. Forfeitures are not favored, and where the language of the policy is doubtful courts will adopt the construction which will avert a forfeiture. Again, courts are reluctant to grant or to declare forfeitures, except in very clear cases, and intendments can not be taken in favor of the party asking the forfeiture. These general principles are fully sustained by the authorities. *Franklin, etc., Ins. Co.* v. *Wallace,* 93 Ind. 7; *Northwestern, etc., Ins. Co.* v. *Hazelett,* 105 Ind. 212, 55 Am. Rep. 192; *Michigan, etc., Ins. Co.* v. *Custer,* 128 Ind. 25; *Painter* v. *Industrial, etc., Assn.,* 131 Ind. 68; *Home Ins. Co.* v. *Marple,* 1 Ind. App. 411; *Bowles* v. *Phenix Ins. Co.,* 133 Ind. 106, 20 L. R. A. 400.

In *Farmers, etc., Assn.* v. *Koontz,* 4 Ind. App. 538, it was held that forfeitures are not favored in law, and instruments will be so construed as to prevent them, if it can be done without violence to the language employed; and that in the case of an insurance policy any provision therein in the nature of a forfeiture clause is to be construed most strongly against the insurer, and as favorably as possible to

the insured.  The law guards jealously the rights of all parties to a contract, and will enforce strictly the conditions thereof, provided enforcement does not abrogate the purpose and intent of the parties as shown by the contract itself.  Conditions which work a forfeiture of a contract, and especially such as enforce the contract as to one party and avoid it as to the other, are not favored in law, and will be construed with the greatest strictness against the party seeking the forfeiture.  Coming within this rule are policies of insurance, where, after a compliance on the part of the insured and the sustaining of a loss, the insurer seeks a forfeiture.  *Phenix Ins. Co.* v. *Lorenz,* 7 Ind. App. 266.

In *Continental, etc., Ins. Co.* v. *Vanlue,* 126 Ind. 410, 10 L. R. A. 843, Elliott, J., said: "Provisions intended to create a forfeiture, wherever found, are strictly construed in order to avert a forfeiture; but such provisions are restricted, with especial care and strictness, in contracts of insurance, the courts, with an almost unanimous voice, deciding that such contracts, because of their peculiar character, shall be strictly and rigidly construed against the insurance company wherever a strict construction is necessary to prevent the forfeiture of the policy," citing many authorities.  By the rules so well established and the principles so firmly grounded, to which we have referred, we are required to give to the policy, or certificate of membership, before us, a very strict construction against appellant, and avert a forfeiture if we can do so without doing violence to the language of the contract.

The certificate of membership issued to appellee provided that so long as he paid the required dues he should receive certain benefits, under certain conditions.  One of the benefits to which he was entitled is expressed as follows:  "For sickness, $10 per week beginning with the second week, and running not longer than thirty weeks; this benefit not in force for sickness beginning less than ninety days after delivery of this certificate."  In the application, which, by

the terms of the certificate, becomes a part of it, appellee was asked many questions. We quote some of them and the answers thereto: "(4) What is your salary per week? A. $15." "(18) Do you agree that indemnity for sickness * * * shall not exceed the amount of your average weekly wages, except as otherwise provided in the by-laws of the society? A. Yes." "Do you understand that if your monthly dues are not paid in advance on or before the third day of each month you stand suspended from receiving all benefits until reinstated as provided for in the by-laws? A. Yes." Upon the face of the certificate are the words in bold relief: "Fraternity" and "Benevolence." As the application is made a part of the certificate, we must construe them together, to determine the intention of the contracting parties. From these it is evident that appellant is a mutual benefit insurance company, and that the evident purposes of the corporation is to give to its members the "full social privileges of said society", and to dispense among them "fraternity" and "benevolence". And so, from a provision of the certificate above quoted, it was one of the objects of the association to provide for actual loss occasioned by illness. Under the facts found,—that appellee had been a member more than ninety days after his certificate of membership was delivered to him before he became sick; that he paid his regular dues within the time prescribed up to and including July 1, 1896; that he was in good standing when he was attacked by illness, and that benefits for such sickness had accrued when he was in good standing, and before his August payment became due,—to declare, upon these facts, that his failure to pay the August instalment worked a forfeiture, would, it seems to us, be construing the contract most strongly against the insured, while the opposite rule prevails. That this is the construction put upon the contract by the parties, and the intention of the insurer, appears manifest from the questions required by appellant to be answered by the appellee in his application, which we have

already quoted. Appellant inquired of appellee what his weekly earnings were, and then got him to agree that his sick benefits should not exceed his average weekly salary. In the very nature of contracts of this character between the insurer and the insured, which provide for the payment of sick benefits, the manifest object of the parties is to provide for the necessities of life, the ordinary living expenses of the insured during his illness and consequent inability to earn them. If the liability for the payment of such benefits attaches while the member is in good standing, and the certificate of membership is in full force, it would be a harsh, unreasonable, and unconscionable rule to hold that a failure to pay subsequent dues while the insurer is indebted to the insured for benefits accrued would work a forfeiture.

It is proper for us to refer to the last question above quoted, which appears in the application. There the insured was asked if he understood that if he did not pay his monthly dues in advance on or before the third day of each month he would stand suspended from receiving all benefits until reinstated as provided by the by-laws. This question he answered in the affirmative. It is urged by appellant that, when the certificate of membership and the application are construed together, it clearly appears that a failure to pay monthly dues, as provided, worked a forfeiture, and that both the insured and the insurer so understood it; and this question and answer are referred to as an evidence that the insured so understood it. If appellant had been in good health on August 1, 1896, when his monthly dues became payable, and failed to pay the amount due, within the limit fixed, then there could be no doubt but what he would stand suspended, and it was in this sense that he understood that fact when he answered the question. But he did not understand that if he fell sick while he was in good standing, and the association became liable to him for sick benefits, under its contract, while he was in good standing, that a failure to pay his monthly dues while in that condition, and while the

appellant was indebted to him, would work a suspension of all his benefits; and to put such a construction upon the contract would defeat the very purpose and object of the parties entering into it.   It is our duty to construe the certificate of membership, the application, and all matters legitimately connected with them, together, and to give such force and effect to them collectively as seem to be consistent with the manifest intention of the contracting parties.   See *Northwestern Ins. Co.* v. *Little,* 56 Ind. 504.

It seems to us that the purpose of the organization, as shown by the certificate of membership, is to afford aid in sickness, and to secure to its members indemnity for actual loss occasioned by accident or illness.   This contract of insurance on the part of appellee is not a speculation, but a mere contract of indemnity to secure from appellant a fair compensation for losses occasioned by his physical disability. A like intention is manifest on the part of appellant from the questions it required appellee to answer in his application.   Why did appellant require appellee to state what his weekly earnings were?   Why did it have him agree that it should not pay him in case of sickness an amount not exceeding his weekly earnings?   What right did appellant have to inquire as to his weekly salary as a condition precedent to issuing to him a certificate of membership? These questions are suggestive, and they are without meaning and useless, unless by a fair and liberal interpretation a fixed and definite meaning can by the court be read into them.   And the only reasonable meaning we can place upon them, in view of the nature of the contract, is that the sick benefits therein provided for are to provide for the ordinary living expenses of the insured, which were formerly met by wages earned by him while in health, and for the extraordinary expenses incurred by reason of such sickness.   Taking the whole contract, including the application, the reasonable and logical conclusion is that as weekly wages are to measure the indemnity to be re-

ceived, the physical inability to earn wages dispenses with the necessity of paying monthly dues, and especially is this true if the liability attaches, and sick benefits have accrued while the insured was in good standing. As to whether the insurer could deduct from the payments of benefits subsequent dues as they matured is another question which we will now consider.

While appellee contends with much force and earnestness that under the facts found there could not be a forfeiture, yet he argues, even if his sickness did not dispense with the necessity of paying membership dues during the sickness, still there could be no forfeiture for failure to pay if there was sufficient money in the hands of appellant accrued to appellee to pay such dues during the period of his sickness. Three classes of cases have arisen in which a forfeiture of insurance benefits has been sought by the insurer for delinquency on the part of the insured, where the insurer at the time of the alleged default has been indebted to the insured in an amount sufficiently large to cancel the latter's indebtedness, and where such cancelation has been ordered by the court: (1) Where the alleged delinquency arose from failure to pay premium or interest on premium notes; (2) where the delinquency arose from a member of a mutual society failing to pay assessments, and (3) where it arose from such member's failure to pay membership dues. And the decisions as to all these classes of cases rest upon the same principle and are sustained by the same reasoning.

The rule, as stated by May on Ins. (3rd ed.) §345a, is as follows: "Dividends standing to the credit of a member of a mutual insurance company will inure *pro tanto* as payment of premiums falling due, especially if such had been the custom of the company, and the course of business between the parties did not show that such was not this contract." 2 Bacon on Ben. Soc. (new ed.) §365, says: "Where a mutual insurance company has in its hands divi-

dends belonging to a policy-holder more than sufficient to pay an accruing premium when it falls due, the company is bound, if the premium is not paid, to make such an appropriation and cannot declare the policy forfeited for failure to pay the premium in question." 1 Biddle on Ins. p. 347, announces the same rule. Applicable to the first class of cases above designated is the case of *Russum* v. *St. Louis Ins. Co.*, 3 C. L. J. 275; 5 Bigelow Ins. Rep. 243. There the by-laws provided that if the insured failed to pay annually in advance the interest on any notes or loans which might be owing on account of premiums, then the company should not be liable for the payment of the sum insured, and the policy should be void. December 2, 1870, the insured failed to pay the interest on a premium note. At that time a dividend on the policy had been declared in the sum of $129.89. While holding the policy forfeited for a failure to pay interest on a premium note subsequent to December 2, 1870, it is declared there could be no forfeiture on said date. On page 244 is the following language: "When on the 2nd of December, 1870, he failed to pay the interest on his note for $580.11 then maturing, there was to his credit in the hands of the company $129.89. This sum the company was bound to apply first in such a manner as to save the forfeiture; that is, to payment in advance of the interest on this note. The balance was applicable to the reduction of the principal of the note."

In the the case of the *Northwestern, etc., Ins. Co.* v. *Fort*, 82 Ky. 269, the policy provided for a forfeiture in default of payment of the interest on premium notes. It was held that the company was bound to apply the dividends in its hands to the interest on the notes to save a forfeiture, although the notes themselves only provided for the application of dividends to pay the principal.

The case of the *Girard Life Ins. Co.* v. *Mutual Ins. Co.*, 97 Pa. St. 15, is also in point. There the premium of $57 became due January 14, 1871. January 1, 1871, there

was owing to the insured a dividend on the policy of $67.72. On January 16, 1871, the premium was tendered and refused. Suit was commenced on the policy, and a defense interposed on account of an alleged forfeiture by failure to pay the premium when it became due. The plaintiff below offered to prove the amount of dividends due on the 1st day of January, 1871, and the evidence was excluded, and for this reason the judgment was reversed. In the discussion of the question of forfeiture, the court declared that the ground of forfeiture of insurance policies is that the insured, by withholding from the insurer money he agreed to pay thereby prevents the latter from performing its contracts of indemnity with others, and that it is unjust that the insurer should not be required to perform its contract while the policy-holder is delinquent. But the court added: "If, however, the company has in its possession money of the assured sufficient to cover the default, and which it has the right to apply thereto, it has the means to keep its covenants with the others, and why not keep them with the assured." Again the court (on page 27) said: "We are constrained to say that it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has the power to apply to its payment." The doctrine there declared is founded on the highest principles of equity and fair dealing, and is supported by sound reason.

The second class of cases above referred to is fairly illustrated by the case of *Knight* v. *Supreme Council*, 6 N. Y. Supp. 427. Knight became a member of the order July 28, 1884. He was illegally assessed for losses occurring before he became a member, and paid the assessment in the belief that it was legal. January 1, 1887, another assessment was made, payable January 31st, following. Knight

died February 3, 1887, and did not pay the last assessment. By the constitution of the order, each member was required to pay all assessments within thirty days after receiving notice, and upon failure so to pay, all rights and claims to benefits were declared forfeited. Upon these facts it was held that there was no forfeiture, as the company, or order, had funds of the insured in its hands which it had unlawfully collected, and that it was its duty to have applied these to extinguish the last assessment. At page 429, the court said: "So long as there remained in the treasury of the defendant sufficient funds of the deceased with which to pay the assessment in question, no defense of forfeiture for non-payment was available to it."

The case which is probably more in point, and illustrative of the third class of cases, viz., those in which default and consequent forfeiture are alleged or claimed to have occurred by reason of a failure to pay membership dues, is the case of *Brady* v. *Coachman's Ben. Assn.*, 14 N. Y. Supp. 272. There the association had a by-law in force which provided that members in arrears for three months' dues ($1.50) should not be entitled to benefits until three months after such arrears shall have been paid. Brady became a member of the association in February, 1870. On November 4, 1888, he became sick. At the time he became sick he was in good standing, and so remained until May 27, 1889, when he became delinquent for non-payment of dues. August 27, 1889, he was three months in arrears, and so continued till December 1, 1889, at which time he paid $5 dues, which made him in good standing till March 27, 1890. March 13, 1890, he sued the association for benefits accruing from November 4, 1888, until suit was commenced. The association did not controvert these facts as to payment of dues by Brady, and hence it claimed (1) that its exceptions to the judge's charge, by which it was left to the jury to determine whether or not he was in arrears on August 27, 1889, were well taken, and (2) that if, as matter of law,

he was three months' dues in arrears on August 27, 1889, and continued so till December, 1889, he was not entitled to sick benefits until three months after December 1, 1889, by reason of the by-law above set out.  Mr. Justice Van Wyck, in delivering the opinion of the court, said:  "It would seem that in leaving it to the jury to determine whether or not plaintiff was three months in arrears on August 27, 1889, the judge had, if anything, been too liberal to the defendant; as adjudicated authority would have justified him in instructing the jury that it would make no difference whether or not the defendant on August 27, 1889, had failed to pay his dues since May 27th, and continued in default until December 1, 1889; provided that they should find that plaintiff had become disabled on November 4, 1888, continued so until the beginning of this action, and had properly notified the association of his disability, and had not compromised his claim for $70, but had properly applied the $70 on account of his claim; for these conclusions of fact would show that on August 27, 1889, when it was claimed that the defendant was in default $1.50, three months' dues, the association itself was in default in its payment of the sick benefits due the plaintiff from November 4, 1888, amounting to about $400.  It would indeed be strange law and bad morals which would hold him in default for his dues, and at the same time exonerate the association from the payment of sick benefits."  These authorities, it seems to us, as well as sound legal and equitable principles, settle the question here involved in harmony with the conclusion reached by the trial court.  As to appellant's right to apply the necessary amount in its hands as accrued benefits to the payment of the dues of appellee, it is urged that as there was no by-law authorizing such action, and it had not been authorized so to do by appellee, it was without power or authority so to do.  This argument is fully met by the language of the court in *Girard Life Ins. Co. v. Mutual Ins. Co.*, 97 Pa. St. 15, where it is said:  "As a matter of

fact, the consent of the assured to the appropriation may be presumed. That he would object to it and thereby forfeit his policy is a proposition too absurd to be seriously considered." It was further held in that case that if the insurer had any doubt of the insured's assent to the application of funds in its hands to the payment of his dues, it was its duty to have ascertained that fact before resorting to the extreme measure of a forfeiture.

We have examined the authorities cited by appellant in support of its argument that appellee had forfeited his membership and benefits by failure to pay his monthly dues. In *Willcuts* v. *Northwestern Ins. Co.*, 81 Ind. 300, it was held that a custom can not be proved by evidence of a single act, and that a partial payment of a premium did not entitle the insured to a proportional share of the insurance. In that case it was held that the contract, in explicit terms, made the right to the insurance an indivisible one, and that a part payment of a stipulated premium could not change the contract and would not entitle the insured to a proportionate part of the insurance. The court also expressly distinguishes the Willcuts case from the case of *Girard Ins. Co.* v. *Mutual Ins. Co.*, *supra*, and quotes approvingly this language used in that case: "Was it conscionable for the defendant company to forfeit this policy, when it had in its hands more than enough of the assured's money to pay the quarterly premium due on the 14th of January?" Judge Elliott then remarks that if the doctrine there declared was applied, it would not meet the question before the court in the Willcuts case.

The case of the *Ancient Order, etc.,* v. *Moore*, 1 Ky. Law Rep. 93, cited by appellant, is not in point here. There the contract of insurance was made with appellant as the parent or supreme head of the order. It had the power to levy an assessment on the death of a member. Appellee was also a member of a subordinate lodge, and under the laws of the order was entitled to receive from the subordinate lodge

sick benefits under certain conditions. He became sick, and the subordinate lodge allowed him sick benefits, but the amount was not paid over to him. The supreme lodge made an assessment against Moore for a death benefit, which he did not pay, and while in arrears as to such payment, he died. In an action on the certificate of mem-- bership by his beneficiary, it was averred that the subordinate lodge owed Moore more than enough to pay the death assessment, which it should have applied thereon. It was held that the beneficiary could not recover, and the decision rested upon three grounds: (1) The lodge owing sick benefits to the delinquent member was not the lodge making the assessment for death benefits, and hence there was no mutuality. (2) The assessments constituted a fund controlled by the supreme lodge, and were expressly dedicated by the constitution to the payment of death benefits. Membership dues in the subordinate lodge were devoted to paying sick benefits by the subordinate lodge. So it seems that the delinquent assessment for death benefits against Moore could not be paid out of a fund of the subordinate lodge expressly dedicated to pay sick benefits. And it was so held by a majority of the court, while Pryor, C. J., wrote a very strong dissenting opinion. (3) The constitution of the subordinate lodge expressly authorized the master workman to pay delinquent dues to the lodge out of the sick benefits, and it was held that, impliedly, it forbade an appropriation thereof to pay delinquent assessments for a death loss. Mr. May, in his work on insurance (3rd ed.), §345, says, in commenting on this case: "The majority of the court based their opinion on the distinction between the funds created by assessments ordered by the grand lodge, which were for the benefit of the families of members after their death, and the dues collected by the subordinate lodges, which were for the payment of 'sick benefits' to sick members."

*Leffingwell* v. *Grand Lodge, etc.*, 86 Iowa 279, 53 N. W.

243, is also cited. We do not think that this case is of controlling influence here, for the facts differ so widely. There the subordinate lodge received all assessments, and the grand lodge paid the salaries of all officers, of whom the plaintiff was one. The claims were not mutual, and hence could not cancel each other. Again, in that case, the grand lodge, who was the defendant, had no power under the constitution to collect assessments directly from its members, as all dues were payable to the subordinate lodge, and hence the grand lodge could not apply the sum owed by it to Leffingwell, as one of its officers, to pay his assessments as a member. The court clearly distinguished the case from those cases where dividends are applied to the payment of dues, on the ground that there the dealings between the insured and the insurer were direct, while in the case the court was considering the member dealt with the subordinate lodge only. Neither is the case of *Hansen* v. *Supreme Lodge*, 140 Ill. 301, 29 N. E. 1121, in point, for the reason (1) that the accounts were not mutual, as the constitution made all assessments payable to the supreme lodge, and sick benefits payable by the subordinate lodges; (2) the constitution required the subordinate lodges to pay delinquent dues from sick benefits owing to the members, to prevent a forfeiture, and that impliedly prohibited payment out of such funds for delinquent assessments.

We might pursue this discussion by citing and commenting upon other authorities quoted, but it would be useless. We have shown the distinction between the principle cases relied upon by appellant and the case before us. In all those cases there was no mutuality, and there were also intervening agencies that so clearly mark the difference between them and this case that we must hold that they are not authority, nor of controlling influence here.

Under the facts in this case, and the authorities, we think it equitable and just to hold that appellant is entitled to deduct from the amount due appellee for sick benefits the

monthly dues during the period of his sickness. He was sick twenty-six weeks, but, under his certificate of membership, he was not entitled to benefits for the first week. His dues for that period would be, in round numbers, $6. The judgment being for $250, and he being entitled to only twenty-six weeks' benefits, it was too large by that amount. If, therefore, appellee will remit $6 of the judgment as of the date it was rendered, within thirty days from this date, the judgment will be affirmed at appellant's costs, otherwise, it will be reversed at appellee's cost.

## Dissenting Opinion.

Comstock, J.—I can not agree with the conclusions reached by the majority of the court.

The material parts of the contract are: In the application: Q. 6. "Do you understand that if your monthly dues are not paid in advance on or before the third day of each month you stand suspended from receiving all benefits until reinstated as provided for in the by-laws?" A. "Yes." In the policy: "This certifies that Walter Hopper is an acceptable member, and as such, during the time he shall pay his dues and his proportion of other expenses authorized by the by-laws, is entitled to receive the full social privileges; also, if in good standing, the following financial benefits under the terms and conditions provided for in the by-laws, viz.: For sickness: $10 per week, beginning with the second week." In the by-laws: "All dues shall be paid on or before the first day of each month in advance. If any member shall fail to pay his dues to the Supreme Council on or before the third day of each month, in advance, such member shall thereby, on account of such failure, and without any action on the part of the Supreme Council, become, and shall thereafter be, suspended from membership and from receiving any and all benefits of membership under his certificate. Any suspended member making application for reinstatement within thirty days after suspension and fur-

nishing satisfactory proof of health may be reinstated upon payment of back dues and a penalty of ten cents to cover expense of correspondence. Any person making application for reinstatement more than thirty days after suspension from this society may be received upon complying with the requirements of original applicants. After reinstatement the member shall become beneficial for sickness originating after thirty days from date of reinstatement, not before." The by-laws and contract are self-acting. Upon failure to pay dues as stipulated, the member is suspended from membership and his right to recover benefits ceases. Appellee so understood the contract.

It is elementary that one cannot claim the benefit of a contract while failing to comply with its terms. No application was made for reinstatement. No question of waiver is presented. No right of claim growing out of a custom or usage of the association in receiving delinquent dues. No dividend was due the assured. No mutual account existing between the parties which would give to either the right of set-off when the premium became due, August 1, 1896. The only question then is whether the insured is entitled to such benefits, when, under the terms of his contract, his membership and all rights incident thereto are suspended, and when he has failed to pay the consideration for which benefits are promised.

In *Klein* v. *New York Ins. Co.*, 104 U. S. 88, it is stated that a condition in a policy of life insurance that, if the stipulated premiums shall not be paid on or before a certain day the policy shall cease, is of the very essence and substance of the contract. Against a forfeiture caused by its failure so to pay, a court of equity can not relieve.

Justice Woods, speaking for the court, said: "A life insurance policy usually stipulates first, for the payment of premiums; second, for their payment on a day certain; and third, for the forfeiture of the policy in default of punctual payment. * * * Each of these provisions stands on

precisely the same footing.   *   *   *   No compensation can be made a life insurance company for the general want of punctuality on the part of its patrons." Citing, *Wheeler* v. *Connecticut Ins. Co.*, 82 N. Y. 543; *Robert* v. *New England Ins. Co.*, 1 Disney (Ohio) 355. The insured has no more right to be released from his or her obligation than the insurance company. While forfeitures are not favored, yet where the parties have contracted for a forfeiture it only remains for the courts to enforce the contract which they have made, if it is neither unlawful nor against public policy. *Northwestern Ins. Co.* v. *Hazelett*, 105 Ind. 212.

The majority opinion would seem to hold that sickness relieved the insured, but held the insurer to the obligations of the contract. If the appellee is entitled to recover, it must be solely upon the ground that sickness excused him from the payment of his dues. It has been held in many cases that this is not an excuse which will avoid forfeiture; among them we cite, *Carpenter* v. *Centennial, etc., Assn.*, 68 Iowa 452, 27 N. E. 456; *Ingram* v. *Supreme Council*, 14 N. Y. St. 600. To the same effect are *Howel* v. *Knickerbocker Ins. Co.*, 44 N. Y. 277; *Yeo* v. *Masonic Mut., etc., Assn.*, 63 Md. 86; *Hawkshaw* v. *Supreme Lodge*, 29 Fed. 770. See, also, Joyce on Ins., §1350; *Willcuts* v. *Northwestern Ins. Co.*, 81 Ind. 300; *Ancient Order, etc.*, v. *Moore*, 1 Ky. Law Rep. 93; *Leffingwell* v. *Grand Lodge, etc.*, 86 Iowa 279, 53 N. W. 243; *Hansen* v. *Supreme Lodge*, 140 Ill. 301, 29 N. E. 1121.

The judgment should be reversed.   Henley, J., concurs in the dissenting opinion.