(No. 6034.   July 28, 1933.)

GEORGE L. BIRLEW, Respondent, v. MUTUAL BENE-
FIT HEALTH AND ACCIDENT ASSOCIATION, a
Corporation, Appellant.

[24 Pac. (2d) 677.]

Walter H. Hanson and F. C. Keane, for Appellant.

H. J. Hull, for Respondent.

MORGAN, J.—October 29, 1928, appellant issued to respondent a policy insuring him "against loss of life, limb, sight or time resulting directly and independently of all other causes, from bodily injuries sustained through purely Accidental Means. . . . . " Said policy contained the following:

"If such injuries. . . . shall wholly and continuously disable the Insured for one day or more, and so long as the Insured lives and suffers said total loss of time, the Association will pay a monthly indemnity at the rate of One Hundred ($100.00) Dollars."

The policy also provides that:

"The payment in advance of premiums of Twelve ($12.00) Dollars quarterly or Forty-eight ($48.00) Dollars annually . . . . beginning with April 1, 1929, is required to keep this policy in continuous effect. If any such dues be unpaid at the office of the Association in Omaha, Nebraska, this policy shall terminate on the day such payment is due. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues.

"The acceptance of any premium on this policy shall be optional with the Association, and should the premium provided for herein be insufficient to meet the requirements of this policy, the Association may call for the difference as required."

"The term of this policy begins at 12 o'clock noon, Standard Time, on date of issue . . . . and ends at 12 o'clock noon on date any renewal is due."

Affixed to the policy is the following indorsement, executed by the president and treasurer of appellant corporation:

"NON-CANCELLABLE ENDORSEMENT.

"The Association cannot cancel this policy during any period for which the premium has been paid.

"It is further understood and agreed that this policy cannot be cancelled by the Association during any period of disability of the Insured."

It will be observed from the foregoing that the quarterly payments of premium were due on April 1st, July 1st, October 1st and January 1st of each year during the life of the contract.

It is stipulated that respondent paid the quarterly premium due on July 1, 1931; that on September 7, 1931, and while the policy was in full force and effect, he "sustained bodily injuries through accidental means which created a liability under the policy now admitted to be $170, and which has never been paid, and it is further stipulated that the plaintiff may have judgment against the defendant for the sum of $170.00 and costs of this action."

It is further stipulated:

"That a quarterly premium of $12.00 became due and payable to the defendant company on October 1, 1931; that this premium was not paid by the plaintiff. That on November 15, 1931 the plaintiff again sustained a bodily injury through accidental means for which the defendant company would be liable under the policy Plaintiff's Exhibit A, if that policy was in force and effect on the said 15th day of November, 1931. That the plaintiff has been totally disabled and is now totally disabled within the meaning of the policy as a result of the accident that occurred November 15, 1931.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"That on account of the injury of November 15, 1931, plaintiff is claiming total disability from the date of the

injury to the present time at the rate of $100.00 per month, and it is stipulated that the plaintiff is, and since November 15, 1931 has been totally disabled.

"That on the 8th day of September, 1931, the first day after plaintiff sustained the first injury he gave oral notice thereof to Mr. H. A. Locke, District Manager of Shoshone County, Idaho, for the defendant company, and the said H. A. Locke advised plaintiff he would give the necessary notice to the defendant company, and that nothing further would be required of the plaintiff except his proof of loss be made upon his recovery from the injury sustained September 7, 1931, and the defendant company thereafter furnished plaintiff with its usual form for filing proof of loss, and on the 12th day of October, 1931, the plaintiff furnished to the defendant company written proof of loss upon the form furnished by the defendant company as aforesaid, which proof of loss is marked for identification Defendant's Exhibit No. 1, and is hereby admitted in evidence by stipulation."

.    .    .    .    .    .    .    .    .    .    .    .    .

"It is further stipulated that after the 13th day of October, 1931, and prior to the injury of November 15, 1931, the plaintiff had a conversation with Mr. H. A. Locke with reference to a settlement of his claim for the first injury and that Mr. Locke at that time advised him that he, Locke, was sending the claim to the company's Portland office for a ruling thereon with reference to the provisions of Part K of the policy, and that it would require three or four days to receive a report from Portland. That approximately two weeks later and prior to plaintiff's injury which he sustained under date of November 15, 1931, plaintiff again met Locke at the office of Robert Ivy in Wallace, Idaho, and that Locke at that time advised plaintiff that he (Locke) was ready to settle for the injury of September 7th, but that before making a settlement he desired to see plaintiff's policy; that plaintiff did not have his policy with him at that time. In the course of the same conversation Locke also advised the plaintiff that the company could not accept any further

premiums under the policy he then held for the reason that as claimed by Locke, he, the plaintiff, had changed his occupation from that of blacksmithing to that of mining, and that it would be necessary to take up the policy which he then had and substitute therefor a regular miner's policy which the company was writing, which substitution would have to be made upon an application by the plaintiff for the miner's form of policy. That such miner's policy called for a quarterly premium of $11.25, and provided $75.00 per month for total disability benefits and with the added provision that only fifty per cent would be paid for the first fifteen days of disability.

"Locke did not see the plaintiff again and he did not bring in the policy here in suit to be surrendered as requested by Locke, and the miner's policy was not issued. In procuring a miner's policy under the rules of the defendant, it would have been necessary for an application to have been made out by the plaintiff and mailed to the home office of the company at Omaha, Nebraska, for the purpose of securing its approval and the subsequent issuance of said policy, if approved."

Trial was to the court, without a jury, and resulted in a judgment in favor of plaintiff, from which this appeal was taken.

Appellant denies liability for the second accident and resulting injury to respondent on the theory that the policy had lapsed because of failure to pay the quarterly premium of $12, which became due October 1, 1931.

Speaking of the principle of law that failure to pay an insurance premium when due forfeits the policy, the Circuit Court of Appeals, Fourth Circuit, in *Long v. Monarch Accident Insurance Co.*, 30 Fed. (2d) 929, a case relied on by appellant, says:

"It is true that the foregoing principle has been qualified to this extent: That if money is absolutely due by the Company to the policy holder when a premium falls due, the Company should apply the same towards the premium and thereby, if possible, avoid forfeiture of the policy. This in-

cludes any excess of premiums paid, dividends, profits, benefit payments, and the like, but the offsetting of such credits will only be required where the company actually has in its hands at the time funds which are absolutely due and payable."

See, also, *Pfeiffer v. Missouri State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; *North v. National Life & Accident Ins. Co.,* (Mo. App.) 231 S. W. 665; *Albrecht v. People's Life & Annuity Assn.,* 129 Mich. 444, 89 N. W. 44; *Columbian Relief-Fund Assn. v. Hopper,* 24 Ind. App. 169, 53 N. E. 1051.

October 1, 1931, when a quarterly payment of $12 on the policy became due, there was due from appellant to respondent, because of his first accident, a sum of money greatly in excess of that amount, of which fact appellant's agent had knowledge prior to the second accident. It is true respondent did not make proof of loss until October 12th, but it does not appear appellant gave respondent notice, as in the policy provided, that it considered the October premium due and unpaid, and he had a right to assume it had deducted, or would deduct, the amount of the premium from the money due him. It was appellant's duty to apply $12 of the money it owed respondent toward the payment of the premium, or, if it considered itself entitled to do so, terminate the contract and notify him to that effect.

The law assumes the October, 1931, premium was paid from respondent's money in appellant's hands, and there was no further premium due until January 1, 1932, so the policy was in full force and effect on November 15, 1931, the date of respondent's second accident.

The judgment is affirmed. Costs to respondent.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.

Petition for rehearing denied.