CARTER v. WASHINGTON FIDELITY NATIONAL INS. CO.

———

(February 11, 1929. Opinion and Decree.)

———

L. Schwartz, of New Orleans, attorney for plaintiff, appellee.

L. R. Hoover, of New Orleans, attorney for defendant, appellant.

JONES, J. This is a suit on a health and accident insurance policy for $186.00. Plaintiff avers that she was taken sick on the 15th day of November, 1926, with a paralytic stroke, which totally disabled her and that defendant paid her twenty-eight sick claims up to July 13, 1927, but refused to pay anything further up to February 15, 1928, when the policy was lapsed, making in all thirty-one weeks at $6.00 per week a total of $186.00.

Plaintiff further avers that defendant attempted to lapse her policy on October 17, 1926, and that thereafter defendant's agent refused to accept premiums, although they were tendered to him.

Defendant answered, admitting the payment of twenty-eight sick benefit claims up to July 1, 1927. It averred that the patient had then been discharged by Dr. Gilbert and that no sick benefit claims were filed by her after July 1, 1927, and that, later on, she had failed to pay four premiums, which failure cancelled policy. It admitted that she had paid $1.50 on November 8, 1927, but averred she had refused to sign the application for the revival of the policy, which was a condition precedent to reinstatement, and that defendant had later tendered back to her the sum of $1.50, as she no longer had insurance.

There was judgment below for the full amount, $186.00, and defendant has appealed.

Appellant, in his brief in this court, uses the following language:

"The writer would not have advised the appealing of this matter, if in his opinion there had been positive certain proof that the plaintiff had duly filed her proof of illness, and the defendant refused to pay. The jurisprudence all hold that in that event there is no further necessity to file additional claims."

The sole question before us, therefore, is whether the record proves that defendant mailed two claims for sick benefits during the month of July, 1927.

Part of the policy relied on by defendant is the first sentence of paragraph 3 of the conditions on the back, which reads in part as follows:

"The Insured shall not be entitled to any benefits for sickness or accident under this Policy unless a certificate on the Company's form by a regularly licensed and practicing physician who is satisfactory to the Company, showing the nature of the sickness or injury, shall first be furnished the Company or its authorized agents."

The record abundantly shows that plaintiff was seriously ill from December 15, 1926; that Dr. Gilbert, her regular physician, paid her many visits at her home; in fact continued to visit her until she was unable to pay him any longer when the Insurance Company stopped its payments. She was sent to Charity Hospital for several months. The certificates of the Charity Hospital show she was suffering with enlarged heart, high blood pressure, chronic kidney disease, chronic congestion of the liver, and the effects of an old cerebral hemorrhage.

Dr. Gilbert testifies that he filled out the two claim blanks for plaintiff, which defendant denies that it received. Hazel Anderson testifies that she was a close neighbor of plaintiff, living in the same yard with her; that she filled out all the claim blanks and mailed them herself to the defendant company, and she particularly states that she mailed the two claim blanks in dispute here, which Dr. Gilbert had signed. On cross-examination she testified that she filled out and mailed claim blanks from the beginning of plaintiff's illness, until defendant refused to pay more; that she could not give the dates, but that she knew she mailed two in July.

The only adverse testimony was that of the manager of the defendant company to the effect that he had no record of receiving these two certificates.

We agree with the trial judge in thinking that the positive testimony of the doctor and of Hazel Anderson is worth more than the negative testimony of the manager of the company. On this point see Harvey vs. Kuhnholz, 3 La. App. 794, where this Court said:

"The presumption is that a letter properly addressed and mailed was received by the addressee * * *."

The record shows that defendant originally refused to pay further claims because their physician, Dr. Azar, recommended that nothing further be paid, as the patient was able to move around, and Mr. Kelly, the superintendent, when asked by his counsel why he quit paying plaintiff, answered:

"On Dr. Gilbert's statement to me."

The evidence does not sustain this contention of defendant as to failure to pay premiums. There are several witnesses who testify that they tendered payments to defendant's agent between October 10th and November 8th, and we hardly think it probable that this penniless, ignorant colored woman, who was desperately ill, would have allowed her insurance to lapse. Furthermore, the evidence tends to show at least one payment was tendered by Lucille Carter, sister of plaintiff, about October 17th, and that she was told the policy had lapsed. This contention that the policy lapsed on October 10, 1927, is answered by the decision of this Court in the recent case of Victor Olezene vs. Eagle Life Insurance Co., Inc., 11 La. App. 153, 121 So. 881.

"An assured in an accident insurance cannot be denied benefits for non-payment of premiums when at the time they become due the company was indebted to him for sick benefits.
"Sick benefits can be denied for non-payment of premiums when due, only when the sickness begins or occurs within the period of non-payment."

The judge of the trial court erred in failing to deduct the premiums falling due during the eighteen weeks of delinquency, and as these amounted to 30 cents per week, a reduction of $5.40 should have been made from the amount allowed. In all other particulars the judgment is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended, and that there now be judgment in favor of the plaintiff, Ophelia Carter, wife of Green Austin, and against the defendant, Washington Fidelity National Insurance Company, in the full sum of one hundred eighty and 60-100 dollars ($180.60), with interest from judicial demand until paid, costs to be paid by appellant.