CONLON, Admx., Respondent, v. NORTHERN LIFE INSURANCE CO. et al., Appellants.

(No. 7,779.)

(Submitted January 12, 1939. Decided June 9, 1939.)

[92 Pac. (2d) 284.]

474

475

*Messrs. Murphy & Whitlock,* for Appellant, submitted an original and a reply brief; *Mr. Edmund T. Fritz,* of Counsel, argued the cause orally.

*Messrs. Pope, Smith & Smith,* for Intervener and Appellant Sigurd Hyland, submitted an original and a reply brief; *Mr. A. K. Smith* argued the cause orally.

*Mr. Jay M. Kurtz, Mr. Fred W. Schilling, Mr. E. C. Mulroney* and *Mr. E. C. Kurtz,* for Respondent, submitted a brief; *Mr. Schilling* and *Mr. Jay M. Kurtz* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The plaintiff, as administratrix of the estate of Bertel M. Stokke, deceased, commenced this action to recover on a policy issued by the defendant insuring the life of the deceased.

The policy was issued May 8, 1930, and quarterly premiums in the amount of $55.50 were made payable on the 7th of each third month after the month in which issued. Two full annual payments had been made on the policy and the quarterly payment that became due on May 7, 1932, was also paid. The quarterly payment which became due August 7, 1932, was not paid. A grace period of thirty-one days in the payment of any quarterly premium was allowed by the contract, which kept the policy in force to and including September 7, 1932.

Stokke appears to have been taken ill on or about the 10th of August, 1932, and died September 8, 1932. The cause of his death does not appear. The complaint alleges the appointment and qualification of the administratrix; the death of Stokke; outlines the general provisions of the policy of insurance; alleges the insured became totally and permanently physically disabled August 10, 1932; was entered as a patient at St. Patrick's Hospital at Missoula, under the care of Dr. Harry Smith and remained in that institution until his death.

Sigurd Hyland, a nephew of the insured, is named as the beneficiary in the policy, but the plaintiff applied for and was granted letters of administration on the insured's estate on the ground, and brought this action alleging, that the beneficiary had been changed and by such change the policy became payable to the insured's estate. Hyland intervened in the action. Both the plaintiff and the intervener proceeded therein and in their pleadings on the theory that a waiver of premium provision of the policy had become operative, and substantially the only controversy between the plaintiff and the intervener is on the question as to who is the beneficiary under the policy.

The defendant's general demurrer to both complaints was overruled. The answer to intervener's complaint admits the issuance and delivery of the policy to the insured, but alleges

the termination of the contract for failure to pay the premium due. First and second affirmative defenses were set up recounting, in substance, the terms of the policy relative to the payment of premiums, and the thirty-one days of grace allowed in the payment of premiums after the initial premium was paid, and the ninety-day disability clause under which the "waiver of premiums" provision becomes operative is quoted. It is further alleged that by reason of failure on the part of insured to furnish any proof of such disability, the provisions in the policy relative to waiver of payment of premiums never became operative, and at the termination of the thirty-one days of grace prior to the death of the insured without the payment of the quarterly premium due August 7, the policy lapsed, was forfeited and all of the insured's right terminated thereunder.

The defendant's answer to the plaintiff's complaint was substantially along the same lines as the answer to the intervener's pleading, with the additional allegation that the provisions of the policy governing the change of beneficiary had not been complied with, and that, if there was any liability under the policy, such liability was in favor of Sigurd Hyland, the intervener, who was named in the policy as the original beneficiary. The affirmative matter pleaded by the defendant was denied by plaintiff's reply.

The matter came on for hearing before the court sitting without a jury, a jury having been specifically waived in open court by all parties. At the beginning of the hearing the defendant objected to the introduction of any evidence by either the plaintiff or the intervener, on the ground that neither of the complaints constituted a cause of action against the defendant. The motion was overruled.

The plaintiff's evidence consists of certain stipulations agreed to in open court, and the introduction of four exhibits, consisting of the insurance policy, a telegram and two letters. No verbal testimony was received on behalf of the plaintiff or intervener, and but one witness testified on behalf of the defendant.

On the policy of insurance being offered in evidence, counsel for intervener objected to its introduction for the reason that it showed on its face that Sigurd Hyland was the beneficiary

thereof, and that the policy had not been endorsed by the president and secretary of defendant as required by its terms to show that the beneficiary had been changed. Defendant objected to the introduction of the policy under its general objections to the introduction of any evidence, contending that the policy itself did not tend to prove or disprove the case as against defendant, but stated that if plaintiff had not offered the policy in evidence the defendant would have done so. The court overruled the objections and the policy was admitted.

By stipulation it was agreed that insured died in Missoula county, Montana, on the 8th day of September, 1932; that he was confined in St. Patrick's Hospital, Missoula, for approximately twenty-eight days just prior to his death, but defendant made the reservation to this stipulation that it was not material or competent under the pleadings. The cause of death was not shown. It was further stipulated that defendant had not paid the amount of the policy to anyone; that at the time of the death of the insured the policy was in the hands of the defendant, having been received by it in the same enclosure as the letter which will hereafter be referred to as Plaintiff's Exhibit "C."

Plaintiff offered Exhibit "B" in evidence, to which the defendant objected, which objection was overruled. Exhibit "B" is as follows:

"Western Union

Received at Room 1005 Northern Life Tower, Seattle Wash.

1932 Sep 7 PM 155

E A 73 8—Missoula Mont 7 236P
Northern Life Insurance Co—

Seattle Wash—

Bertel M Stokke disabled in Hospital Letter Today—

S G Skulason

(Stamped as follows:) Claim Dept
 Received
 Sep 8 1932
 Northern Life."

S. G. Skulason, whose name appears on this exhibit, was at one time agent of the defendant and wrote the policy on the

life of the insured, but, as will appear later, had ceased to be the agent of the defendant several months prior to the time this telegram and other exhibits were sent by him to the defendant.

Plaintiff then offered in evidence her Exhibit "C," which was admitted over objection. Exhibit "C" is as follows:

"S. G. Skulason
Lawyer
50–51 Higgins Block
Missoula, Montana
"September 7th, 1932.

"Northern Life Insurance Company,
"Seattle, Washington.

"Gentlemen: Bertel M. Stokke, holder of policy No. 132–113 had for a number of days been confined to bed in St. Patrick's Hospital here under the care of a doctor. He notified me about two weeks ago when he first went in. I talked with his doctor to learn the cause of his sickness, but he was not then ready to say. Then I was called away from the city and just returned. I saw Stokke last night and wired you this morning. A premium is due on the policy. Stokke wants that amount deducted from the amount of his claim when that is determined. Please send the necessary blanks and I will have them filled.

"Mr. Stokke wants to change the beneficiary so as to make the insurance payable to his estate and for that purpose I am herewith enclosing the policy.

"Kindly reply promptly, as Stokke is sick and considerably worried. The reason he comes to me with this matter is that I wrote his policy while I was agent here.

"Yours very truly,
"S. G. SKULASON.

"(Stamped as follows:)

A B C D E F G H I J K L M N
— Received —
P V
(Time symbol:)
Q W
10:40
R X
S Y
T Sept 9, 1932 Z
Northern Life Insurance Co."

Plaintiff then offered in evidence her Exhibit "D," which was admitted over objection of defendant. Such exhibit is as follows:

"S. G. Skulason
Lawyer
50–51 Higgins Block
Missoula, Montana

"Sept. 9th, 1932.

"Northern Life Insurance Company,

"Seattle, Washington.

"Gentlemen: On the 7th of this month I wired you and wrote a letter the same day for Bertel M. Stokke, holder of policy No. 132113, and with my letter I enclosed the policy for the purpose of changing the beneficiary. I now have to report that Stokke died after an operation at St. Patrick's Hospital here yesterday. Please write me at once advising what is necessary to do and send whatever blanks will be needed. If it is necessary to send the policy back, you may send it to me.

"Thanking you for your usual prompt attention, I am,

"Yours very truly,

"S. G. SKULASON.

"(Stamped as follows:)

A B C D E F G H I J K L M N
O Received U
P V
 Time symbol:
Q W
 7:40
R X
S Y
T Sep 12 1932 Z
Northern Life Insurance Co."

At this point the plaintiff and intervener stated that they had no further evidence to offer. Thereupon the defendant called John F. Bamford, legal counsel and assistant to the president of the defendant, as a witness in its behalf. The material part of the testimony of this witness is substantially as follows: He had been connected with the defendant company since 1907, and was in the employ of the defendant in the year 1932; he was familiar with the policy issued to Bertel M. Stokke, plain-

tiff's Exhibit "A," and was likewise familiar with plaintiff's Exhibits "B," "C" and "D"; Exhibit "A" was received by the defendant from S. G. Skulason, enclosed with the letter from Skulason, plaintiff's Exhibit "C." Such letter was received by the witness September 9, 1932, at Seattle, Washington. Plaintiff's Exhibit "D" was received at Seattle, September 12, 1932. All of these exhibits were received at the Seattle office subsequent to or about the time of the death of the insured. The premium due on the policy on August 7, 1932, was never paid to the defendant and, as would be shown under the terms set forth in the policy when such payment was not made by September 7, 1932, the policy lapsed. No other documents of any kind or nature were received by the defendant from anyone in connection with the matters referred to in Exhibits "B," "C," and "D" up to the time of the death of the insured. No request of any nature was received by the defendant to change the beneficiary named in the policy, except such requests as were shown in Exhibits "B," "C" and "D." That defendant has a prepared form on which requests for change in beneficiary must be made, and, according to the terms of the policy, that form is required, and none of that nature was ever received, or any other than the exhibits above mentioned. S. G. Skulason's agency with the defendant terminated January 25, 1932, and Skulason had no connection with the defendant company subsequent to that date.

All the testimony given by the witness Bamford was received without objection, and was varied in no material way on cross-examination. The witness admitted that the policy had been in the possession of the defendant after having been received at its Seattle office, as heretofore mentioned, and up until the time of the hearing; that defendant had refused to return the policy to plaintiff on demand for the reason that after the death of the insured the policy was a contract between the company and the beneficiary, and the defendant had declined to surrender it to anyone until it was assured that the party demanding it had a legal right to its possession. On redirect the witness testified

that the company had no desire or intention to withhold the policy from the rightful owner.

At this point defendant moved the court for judgment in its favor and against the plaintiff and intervener, which motion was overruled. A motion by counsel for intervener for judgment in favor of the intervener was likewise overruled. Thereupon counsel for plaintiff asked and received permission to reopen the case. Counsel for plaintiff then proposed certain stipulations relative to Skulason acting for the insured in sending the policy to the defendant for change of beneficiary and in notifying the defendant of the illness of the insured. Both the defendant and intervener agreed that the facts as submitted by counsel for plaintiff were correctly stated, but that such facts were insufficient to bind the defendant or anyone else and were incompetent and irrelevant under the issues raised by the pleadings, and not sufficient to establish the relation of agency between the deceased and Skulason.

A motion by plaintiff for judgment according to her complaint was made but not passed upon by the court at the time. All parties joined in requesting the court to make and file findings of fact and conclusions of law, and it was agreed that after the same were submitted a time would be set for oral arguments.

In due course findings of fact and conclusions of law and a decree were made and entered granting plaintiff substantially the relief prayed. A number of the findings and conclusions of the court were excepted to by both the defendant and the intervener, but decree in accordance with the court's findings and conclusions was made and entered. From such judgment both defendant and the intervener appeal.

The intervener assigns five specifications of error, all of which go to some phase of the court's findings to the effect that the beneficiary was properly changed from the one named in the policy, the intervener, to the insured's estate. As these specifications of error are covered by similar assignments made by defendant, the conclusions of this court as to the merit of the

defendant's assignments may be accepted as a determination of the assignments of the intervener.

The defendant assigns fifteen specifications of error. We deem it unnecessary to take up these numerous assignments in detail. The questions to be determined are: 1. Was the policy alive at the time of the death of the insured; and 2, If the policy was in effect at the death of the insured, had the beneficiary been changed, as contended by the plaintiff?

Neither the plaintiff nor intervener contends that the defendant had paid the premium due August 7, 1932, but both contend that the "waiver of premium" clause became operative by reason of the disability of the insured, and the case was tried on that theory.

The contract is composed of four parts. First, an ordinary life policy insuring the life of the deceased for $2,500; second, a rider providing "Automobile Accidental Death Benefits"; third, a supplemental contract providing for "Permanent Total Disability Benefits." In large type just over the top marginal line of this supplemental contract are the words, "This supplemental Contract Provides for Waiver of Life Insurance Premiums Without Reducing the Benefits under the Life Policy." Fourth, a rider covering "Accident Indemnities" and "Sickness Indemnities," and just above the top marginal line are the words, "This Contract Provides Indemnity for Loss of Life, Limbs, Sight, Paralysis, Insanity and for Loss of Time Through Accident or Sickness as Herein Specified." The policy provides that payment of premiums in advance "shall be a condition precedent to the validity of any claim under this policy."

The only reference in any part of the policy to "waiver of premiums" appears in rider number three, covering permanent disability. The provisions of that supplemental contract, pertinent here, are as follows: "If the Insured, during his lifetime and while this Supplemental Contract and Life Insurance Policy (herein called 'The Policy') to which it is attached are in full force and effect and prior to the anniversary of the policy nearest his sixtieth (60) birthday, shall furnish the Company at its

Home Office with due proof that he has become totally and permanently disabled as defined below in Sections One (1) and Two (2), and such total and permanent disability has been continuous for not less than ninety (90) days, The Company will grant the following Benefits: Premiums Cease A. Will waive the payment of any further premiums which become due upon the Policy during the continuance of such Total and Permanent Disability," etc.

The court properly found that there was no "waiver of premiums" for the reason that such disability had not continued ninety days. The court predicated its conclusion that the policy remained in force to the time of the death of the insured on its finding that there were funds in the hands of the defendant belonging to the insured which the insured had a right to have applied to keep the policy alive. These funds, the court found, arose out of the provisions of the contract as set out in rider number four under the sick indemnities provisions heretofore mentioned. After providing that any indemnities are payable only after "affirmative proofs" are made that such indemnities are due under the terms of the policy, the policy then sets out subdivisions B and C of sickness indemnities allowed, as follows: "Monthly Indemnity, Total Loss of Time $100

"(B) If proofs as above show such sickness or disease not to have caused loss of sight or paralysis of members or insanity as stated in clause 'A' but that the Insured has thereby been totally disabled for not less than seven consecutive days, and on account of which he could perform none of the duties of his occupation and been under regular treatment of a licensed physician, then the Company will pay him the amount of the Monthly Indemnity last above stated, for the period of such total disability, not exceeding twelve months, and not extending beyond the time of death. * * *

"Monthly Indemnity, Partial Loss of Time (One-half) $50

"(C) If the Insured shall furnish proofs entitling him to indemnity for seven days or more of total disability, as provided in clause 'B,' and such proofs show that immediately fol-

lowing and continuous therewith partial disability continued for a certain period in all particulars as described in clause 'B,' except that he was completely.prevented from performing one or more essential duties of his occupation, The Company will pay him the indemnity last above provided, but indemnity for partial loss of time shall in no event be payable for more than six months nor extend beyond the time of death."

Findings 8 and 9 illustrate the trial court's manner of arriving at the conclusion that there was money in the hands of the defendant which should have been applied to keep the policy alive. These findings are as follows:

"VIII. The sickness indemnity provisions provide for payments of $100.00 per month for total loss of time, and this without qualification. On September 7 Stokke had been disabled by sickness from August 10, a period of 28 days, and had coming 28/31 of $100.00, or $90.30. The premium payable on that date, $55.50, when deducted therefrom, left a balance in Stokke's favor of $34.80. On the back of such sickness indemnity page, under (18), is found the provision that upon payment of any such claim any premium then due and unpaid may be deducted therefrom. The insured had requested that blanks be sent to him to make out the proofs of his sickness, and while the policy requires such proofs, the company, with the policy in its possession, did not send any blanks nor make any further request as to such proof, and defects, if any, in completing such proofs, have been waived. While the complaint contains no allegations relative to this sickness benefit, the policy being in evidence without objection, on this point the complaint will be deemed amended to conform with this finding."

This finding is incorrect in holding that the policy was in the possession of the company in time to send forms to the insured on which to submit proofs of sickness. The evidence is clear that the policy enclosed with Plaintiff's Exhibit "C" did not reach the defendant until after the death of the insured.

"IX. Under general provisions the conditions relative to the payment of premiums, and when the policy may lapse, are

very complete, yet these provisions must be considered modified by the other paragraph on the same page under 'Indebtedness— Any indebtedness to the company on account of this policy and any unpaid portion of the premium for the insurance year in which the death of the insured occurs, will be deducted, in any settlement hereunder.' At the time of Stokke's death a settlement was due him, as heretofore found. Likewise, this is a participating policy, which provided that at the end of the second policy year, and thereafter, the company would apportion to the policy its share of the surplus of the participating business, which could be applied to the reduction of any current year's premium; the time for such participating had arrived, as the policy had been in force more than two full years, and while there is no evidence that any such share of dividend was owing to the plaintiff, yet this seems contemplated, in the settlement mentioned in the above quoted provisions. The incontestability provisions likewise under general provisions of the policy also contemplated that disability benefits if any are payable, affects the whole policy. The complaint is also deemed amended to conform with this finding.''

We think to deem a pleading amended to conform with a ▮ finding of a court is incorrect. The rule is that a complaint may be deemed amended to conform to evidence or proof introduced without objection. (*Nuhn* v. *Nuhn*, 97 Mont. 596, 601, 37 Pac. (2d) 571; *Lackman* v. *Simpson*, 46 Mont. 518, 525, 129 Pac. 325; *Moss* v. *Goodhart*, 47 Mont. 257, 268, 131 Pac. 1071; *Ruhle* v. *Thrasher*, 88 Mont. 468, 477, 295 Pac. 266; *Blackwelder* v. *Fergus Motor Co.*, 80 Mont. 374, 387, 260 Pac. 734; *Parsons* v. *Rice*, 81 Mont. 509, 264 Pac. 396; *Davis* v. *Claxton*, 82 Mont. 574, 593, 268 Pac. 787; *Ingebrightsen* v. *Hatcher*, 87 Mont. 482, 485, 288 Pac. 1023, 1025.)

Taking up the construction of the policy contract, if the insurance company had no funds in its hands due the insured out of which the insured was entitled to have his quarterly premium paid, no recovery can be allowed on the policy.

Amongst the numerous "Standard Provisions" of the policy, the following are pertinent here:

"(4) (C) Written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury of [or] within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Company.

"(5) Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the Company at its home office in Seattle, Washington, or to any authorized agent of the Company, with particulars sufficient to identify the Insured, shall be deemed notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"(6) * * *

"(7) (C) Affirmative proof of loss must be furnished to the Company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within ninety days after the date of such loss.

"(8) * * *

"(9) (B) All Indemnities provided in this policy for loss other than that of time on account of disability will be paid immediately after receipt of due proof.

"(10) Upon request of the Insured and subject to due proof of loss all accrued indemnity for loss of time on account of disability *will be paid at the expiration of each sixty days* during the continuance of the period for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof. (It will be noted that allowance for disability indemnity is not payable until sixty days after proof.)

"(11) (A) Indemnity for loss of life of the Insured is payable to the beneficiary if surviving the Insured, and otherwise to the estate of the Insured. *All other indemnities of this policy are payable to the Insured.*" [Italics supplied.]

Construing these provisions of the policy according to the plain meaning of the language used, we find (a) the insured is required to give written notice to the insurer within ten days after the disability has commenced, and this must be followed by proof of loss of time arising from such disability within ninety days after the termination of the disability, unless it was not reasonably possible for the insured to give such notice within the time provided; (b) under paragraph 5 it would appear that the notice may be given by the insured in case it be for accidental or disability loss, or by someone in his behalf, and in case of death of the insured the notice may be given by the beneficiary or by someone in his behalf. This notice may likewise be excused by proper showing that it was not reasonably possible to give the same within the time provided, and it may be given to the insurer at its office in Seattle or to any authorized agent; (c) proof of loss must be furnished to the company at its Seattle office.

The distinction between the requirements as to notice of disability and proof of loss will be noted. Both notice and proof of loss are required. The terms are frequently used interchangeably, but they are distinct. (*Da Rin* v. *Casualty Company of America,* 41 Mont. 175, 108 Pac. 649, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164; *Ames* v. *Minneapolis F. & M. Ins. Co.,* 69 Mont. 177, 220 Pac. 747.) Proof being more formal and definite. This is made clear in the *Da Rin Case,* but prompt proof of loss may answer for notice.

(d) Loss by reason of disability is covered by sections 9 and 10 above: All indemnities except loss by reason of disability will be paid immediately after receipt of due proof; loss by reason of disability, upon request of the insured, will be paid at the expiration of each sixty-day period during the time for

which the insured is liable or the disability continues, and any balance after disability ceases and upon receipt of due proof.

"Due proof of loss" is a condition precedent to the right of ██ recovery of any loss arising under the policy unless waived. (*Montana Auto Finance Corp.* v. *Federal Surety Co.,* 85 Mont. 149, 278 Pac. 116; *La Bonte* v. *Mutual F. & L. Ins. Co.,* 75 Mont. 1, 241 Pac. 631.; *Careve* v. *Phoenix Ins. Co.,* 67 Mont. 236, 215 Pac. 235; *Tuttle* v. *Pacific Mut. Life Ins. Co.,* 58 Mont. 121, 190 Pac. 993, 16 A. L. R. 601; *Da Rin* v. *Casualty Company of America,* supra.) Other jurisdictions are in full accord on this rule. See annotation beginning on page 1089 of 106 A. L. R. We quote from the annotation:

"Under the varying provisions of life insurance policies for the paying of disability benefits in case of total and permanent disability, it is generally held that the period of such benefits begins when proof of disability is made, or at a time thereafter, specified in the particular policy, and that such period does not include any time before the making of such proof, or before the time specified." This text is supported by citations from a number of federal cases and decisions from Alabama, Arkansas, Delaware, Illinois, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Oklahoma, South Carolina, Texas, Washington and West Virginia. Following these numerous citations other cases are cited to illustrate "application of rule to specific cases."

The meaning of "due proof" is treated at length in an annotation in 109 A. L. R. beginning on page 825, from which we quote as follows: "In the absence of a meaning given the words 'furnish,' 'due' and 'proof,' the words are given their usual meaning in ordinary language. (*Aetna L. Ins. Co.* v. *Tipps,* (1936, Tex. Civ. App.) 98 S. W. (2d) 375.) The term 'due proof,' as used in a policy providing for the payment of disability benefits, or waiver of premiums, upon receipt of 'due proof' of disability, does not require any particular form of proof which the insurer might arbitrarily demand, but such a statement of facts reasonably verified as, if established in court, would prima facie require the payment of the claim. (*Peters* v. *Mutual L. Ins.*

*Co.* (1936; D. C.) 17 Fed. Supp. 246; *Zorger* v. *Prudential Ins. Co.* (1935) 282 Ill. App. 444; *Wray* v. *Equitable Life Assur. Co.* (1935) 129 Neb. 703, 262 N. W. 833; *Schollman* v. *Prudential Ins. Co.* (1936) 130 Neb. 662, 266 N. W. 75; *McAndrews* v. *Prudential Ins. Co.* [132 Neb. 332, 271 N. W. 857], [109 A. L. R.] 821; *Jarvis* v. *Northwestern Mut. Relief Ass'n* (1899) 102 Wis. 546, 78 N. W. 1089 [72 Am. St. Rep. 895].)'' Then follow excerpts from numerous decisions briefly summarizing the facts held to constitute both sufficient and insufficient proof of loss, which in the main support our conclusions in the case at bar:

''In the following cases it was held that provisions for 'due proof' of disability were not sufficiently complied with:

''—where a letter by the physician who attended the insured informed the insurer that the insured had been sick for some time, and stated that an investigation would be appreciated; *New York L. Ins. Co.* v. *Quinn* (1934) 171 Miss. 396, 157 So. 902;

''—where the evidence showed that the insured's wife at his request wrote the insurer that he had sustained an accidental injury, and that the doctor thought that the disability might continue for six or seven months, *Equitable Life Assur. Soc.* v. *Dorriety* (1934) 229 Ala. 352, 157 So. 59; * * *

''—where a certificate by the insured's wife stated that he was totally disabled on a certain date, but a certificate executed by a physician stated that the insured was not totally disabled until another date, which was about eighteen months subsequent to the date fixed by the wife's certificate, the court stating that the discrepancy between these two certificates, unexplained, did not constitute 'due proof' of disability on the date claimed by the wife, *Mutchnick* v. *John Hancock Mut. L. Ins. Co.* (1935) 157 Misc. 598, 284 N. Y. Supp. 565.

''In *Equitable Life Assur. Soc.* v. *Branhams* (1936) 263 Ky. 404, 92 S. W. (2d) 357, it was held that proof of temporary total disability filed under an accident and health policy was not a sufficient compliance with a requirement of a group policy,

issued by the same company, that 'due proof' of total and permanent disability should be furnished within one year from the date of its commencement.

"And unverified statements by the insured that he was suffering from a diseased condition of the heart which caused him to be totally and permanently disabled were held not to constitute the 'due proof' of disability required by a life insurance policy, the court stating that a layman was not competent to give an opinion as to the condition of his heart and as to the effect of that condition upon his ability to follow continuously a 'gainful occupation. (*Peters* v. *Mutual L. Ins. Co.* (1936, D. C.) 17 Fed. Supp. 246.)

"So it was held in *Brams* v. *New York L. Ins. Co.* (1930) 299 Pa. 11, 148 Atl. 855, that the provision for 'due proof' of disability was not complied with by a letter merely stating that the insured was sick and would pay his premium as soon as he got well, where the policy provided that upon receipt at the insurer's home office, before default in payment of premiums of 'due proof' that the insured was totally disabled and would be continuously so for life, or if the proof submitted was not conclusive as to the permanency of such disability, but established that the insured was and for a period of not less than three consecutive months immediately preceding receipt of proof had been totally disabled, specified benefits would be granted, the court stating that the notice relied on gave no indication that total disability had existed for the time fixed prior to the default.

"And in *Cochens* v. *Prudential Ins. Co.* (1935) 4 Cal. App. (2d) 172, 40 Pac. (2d) 902, it was held that knowledge of a soliciting agent of the insurer that the insured had been injured, or the fact that the agent saw insured in bed in a hospital, did not constitute the furnishing of 'due proof' of total and permanent disability within the meaning of a life insurance policy providing for waiver of payment of premiums upon due proof that the insured has become permanently disabled."

492

Under paragraph 10 of the Standard Provisions of the policy, as heretofore quoted, loss arising from the death of the insured is payable to the beneficiary named, if living, otherwise to the insured's estate, while all other indemnities are payable to the insured. In some jurisdictions such indemnities, being payable only to the insured and for his benefit, do not survive in favor of the beneficiary who takes on the death of the insured. While we are not inclined to that view, it should be considered on re-trial.

It has been suggested that proof of disability was waived by the insurer in the case at bar. The general rule appears to be that, "The fact that the company, even with notice of loss, remains inert and fails to demand that insured comply with the stipulations as to proofs of loss does not constitute a waiver thereof, unless coupled with other facts calculated to lead insured to believe that proofs need not be furnished." (33 C. J., sec. 684, p. 26.) This rule does not apply to special matters, but proof of disability is not a special matter.

The insurer did not receive notice of the insured's illness until about the time of his death. According to the testimony of the only witness, which is not directly challenged, notice of Stokke's illness was not received at the Seattle office until after his death. It is true that the telegram of Skulason to the insurer, Plaintiff's Exhibit "B," was sent from Missoula at 2:36 P. M., September 7th. It was received at Seattle, as indicated by the exhibit, at 1:55 P. M. the same day, the earlier time shown in the Seattle office is accounted for by the reason of the hour's difference in time between Missoula and Seattle. But according to the notation made by the defendant at its Seattle office, the telegram was not received at its claim department until September 8, 1932, and Stokke died on that date at 9 o'clock A. M. Whether there was negligence in handling the telegram at the Seattle office does not appear, unless the difference in time it reached Seattle and the time it reached the claim department of defendant is evidence of negligence. It does not appear to us that the lapse of time clearly shows lack of attention on the part of defendant. From the entire record the only

evidence of negligence in advising the defendant about Stokke's illness appears in Plaintiff's Exhibit "C," Skulason's letter to defendant, wherein it appears that Stokke advised Skulason some two weeks prior to September 7 of his illness, and shortly after being so notified by Stokke, Skulason left the city and was absent for two weeks. In any event, the letter referring to the telegram did not reach defendant at Seattle until after the death of Stokke, and the telegram is not proof of anything, but merely notice of Stokke's illness.

Proof sufficient to establish the right of insured to sick idemnities under the policy is not shown by the record to have been made. Plaintiff's Exhibits "B," "C" and "D," the telegram and two letters written by Skulason, do not meet the requirements of formal proof of disability.

The issue of waiver of proof was not raised in the trial court either by pleadings or evidence, nor was it argued on appeal. (*Glacier County* v. *Schlinski,* 90 Mont. 136, 137, 300 Pac. 270; *Montana Auto Finance Corp.* v. *Federal Surety Co.,* supra; *Waite* v. *Shoemaker & Co.,* 50 Mont. 264, 146 Pac. 736.) The rule is established in this jurisdiction that one who depends upon waiver of proof of loss under an insurance policy, as provided by our statute, section 8145, Revised Codes, must plead and prove the facts essential to constitute waiver. (*Montana Auto Finance Corp.* v. *Federal Surety Co.,* supra; *Krause* v. *Insurance Co. of North America,* 73 Mont. 169, 235 Pac. 406; *Snell* v. *North British & Mercantile Ins. Co.,* 61 Mont. 547, 203 Pac. 521.)

In the *Montana Auto Finance Corporation Case,* supra, the court, having under consideration the provision of a surety bond, relative to notice of loss said [85 Mont. 149, 278 Pac. 119] : "Such a condition in a bond is a condition precedent, and failure to comply therewith will bar recovery under the bond, unless the condition has been waived by the company. [Citing cases.] That the insurer may waive this condition is settled beyond question in this jurisdiction. [Citing cases.] Counsel concede this to be the rule * * * , but insist that

plaintiff failed to plead waiver. With this we cannot agree." The court then quoted from the complaint in that action the pleadings upon which it predicated its conclusion that plaintiff there had pleaded waiver.

Counsel for defendant argued for a new trial, not for judgment in its favor, conceding defendant was not entitled to judgment by reason of the rule laid down in *Horst* v. *Staley*, 101 Mont. 543, 54 Pac. (2d) 876, *Billings* v. *Missoula White Pine Sash Co.*, 88 Mont. 322, 292 Pac. 714, and *Batchoff* v. *Melzner*, 71 Mont. 411, 230 Pac. 48, where it is said, in substance, that a judgment cannot be permitted to stand where it is based upon unwarranted findings. It is our opinion that the findings in the case at bar are not warranted by either the pleadings or the evidence, and for that reason a new trial should be granted.

To support the contention that there were funds in the hands of the insurer which the insured was entitled to have applied to keep the policy alive, the following is advanced: (a) The insurer, by failure to furnish forms on which proof might be made, waived proof and, therefore, (b) that the notice of illness given the insurer by the Skulason telegram was sufficient to entitle the insured to indemnity for loss of time for ten days, under the rule laid down in *Barron* v. *Equitable Life Assur. Soc.*, 197 Minn. 367, 266 N. W. 845.

On proposition (a), section 8144, Revised Codes, and *Caldwell* v. *Washington etc. Co.*, 94 Mont. 431, 23 Pac. (2d) 257, are cited. Section 8144 provides: "All defects in a notice of loss, or in preliminary proofs thereof, which the insured might remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." The telegram by Skulason of September 7, 1932, received at Seattle September 8 by the insurer, was notice of the insured's illness, and we are now concerned only with proof of loss for sick indemnity. The facts are, as shown by the record, that, as heretofore stated, the telegram was received by the insurer September 8. This appears to be the first advice of any nature that the insurer had of the insured's illness. At that time the in-

sured was dead. Plaintiff's Exhibit "C"—a letter by Skulason written the same day the telegram was sent, was received by the insurer September 9. That letter asked for blanks on which to submit proof of loss of time by sickness; September 9 Skulason again wrote the insurer, plaintiff's Exhibit "D," advising the company of the death of the insured. We think these facts do not show unnecessary delay on the part of the defendant in forwarding blanks before the death of the insured. No neglect or refusal to furnish blanks is alleged in any of the pleadings, nor mentioned in any of the evidence; hence, the contention that the insurer committed some act upon which waiver of proof of loss by sickness could be predicated does not appear well founded.

Plaintiff's whole case is grounded upon alleged waiver of payment of premiums under another provision of the policy, which the court found to be an allegation not sustained because disability had not continued ninety days. The insurer may have sent forms for proof of sick disability. Forms may have been mailed to Skulason, but he was not called to testify to such fact. They may have been sent to the insured himself, but it is purely a matter of conjecture as to whether such forms were sent to anyone; if they were not sent, it does not appear that three days' delay was such delay as amounts to a waiver of proof of disability.

Furthermore, if the forms had been sent to Skulason or Stokke, they could not have reached either in the ordinary course before the death of the insured, and Skulason could not have made proof of the disability of a dead man. Such agency relations as existed between Skulason and Stokke terminated on the death of Stokke, and there was at that time no legal representative appointed or qualified who could act for the deceased, and no proof of loss for any disability of the insured, during his lifetime, is shown to have been made by the plaintiff after she became the authorized representative of Stokke's estate.

The contract of insurance on the death of Stokke became a contract between the insurer and the beneficiary named in the contract, and if Stokke was entitled to anything for loss of time for ten days just prior to his death, such amount as was due,

if any, would go to his estate and not to his beneficiary, and we have no evidence whatever to show that the plaintiff, when authorized to act in the premises, requested forms on which to make proof of loss, made any such proof at any time or ever demanded anything under the sickness disability clause of the contract.

The *Caldwell Case*, supra, has no similarity to the case at bar in so far as grounds for waiver are concerned. The plaintiff in that case, after notice, made proof of loss that was accepted by the insurance company which paid the indemnity provided by the terms of the policy for a period of seven months. The company then refused to pay further, and the action in that case followed; the plaintiff had judgment and the matter was appealed. The court said in support of the claim of waiver of proof: "After accepting said proofs so furnished by plaintiff within the time prescribed by said policy defendant made no objection to plaintiff's proof, nor did defendant demand further proof of said loss and injury during a period of more than seven months after receiving said proofs of loss, and after said defendant had paid to this plaintiff the sum of $700, as heretofore set out and alleged." Subsequently, and while the plaintiff was still incapacitated from the accident, he requested blanks of defendant's agent on which to submit his monthly report required by the policy, and for the first time learned that his proof of injury was not acceptable and nothing more would be paid. It was further said in that case: "By its acts, in the absence of a showing that it was misled by the plaintiff to its prejudice, it must be held that the defendant waived its right to insist upon further written proof under the terms of the policy." There is nothing in the pleadings in the case at bar, the evidence or the argument which in any manner or to any degree sustains the contention that any proof was ever made or offered the insurer of the insured's disability. Not even a physician's certificate stating what the insured was suffering from was put in evidence.

On contention (b) it is urged that sick indemnity for ten days under the policy, which provides for $100 per month, would amount to approximately $33; that such amount was

more than sufficient to keep the policy alive as to the insurance on the life of Stokke for the extra quarter from August 7, when the quarterly premium was due, until November 7 following. This theory of keeping the policy alive was not pleaded; no evidence was given relative to such theory and it was not argued by counsel, and such essentials cannot be supplied by this court. If relied upon, it must be developed in the trial court. It involves the assumption that the different parts of the policy, viz., for insurance on the life of Stokke, for automobile accidents, for total permanent disability, and for loss of time from accident or sickness constitute four separate and distinct contracts, and that one part might be kept alive and the other allowed to lapse. We think the contract of insurance must be considered as it has been treated by the parties themselves, that is: as a whole; but assume that it is divisible, that one part may be salvaged and another part discarded, we think it must be admitted that it was necessary to keep that part which provides for sick indemnities alive in order that recovery might be had to obtain the money to keep the life insurance provision alive. Could the policy be kept alive by a partial payment on the quarterly premium? If the sick indemnity, if any is found to be due, is not sufficient to sustain itself and the life insurance, can either survive?

In addition to all these contingencies, the parties have contracted that proof of disability must be affirmatively made, *as a condition precedent,* to any recovery under the policy, and, after proof is made, the insurer may not be forced to make payment until sixty days after proof. Proof comes before payment, and as a general rule indemnity for loss does not relate back to cover any loss that accrued prior to proof. This provision no doubt is provided to enable the insured to investigate, determine and verify the facts upon which the claim of indemnity is predicated. During this period of time, after proof and before the insurer may be required to pay the sick indemnity, the claim against the insurer might be classed as an unliquidated claim, and, if an unliquidated claim, it remains, while un-

liquidated, subject to disapproval and disallowance, and while in that state it cannot be said to be money due under the terms of the policy which may be applied to keep the insurance policy alive in a case such as that at bar.

The case of *Barron* v. *Equitable Life Assur. Soc.*, supra, applies no rule that is of any value here. That case turned entirely upon the question of notice. The question we have under consideration is one of proof. Notice and proof are covered by separate and distinct provisions of the contract. (*Da Rin* v. *Casualty Co. of America*, supra.) That the *Barron Case* has no application in the case at bar becomes clearly obvious by the rules applied in the case of *Andrews* v. *Aetna Life Ins. Co.*, 198 Minn. 1, 268 N. W. 415, 106 A. L. R. 1085. The opinion in the *Barron Case* was written by Justice Holt in the supreme court of Minnesota, and handed down May 8, 1936. The *Andrews Case* was by the same court, written by the same Justice, and handed down July 17, 1936, a little more than three months later.

Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense. (*Imperial Fire Ins. Co.* v. *Coos County,* 151 U. S. 452–463, 14 Sup. Ct. 379, 38 L. Ed. 231.) "As long ago pointed out by this court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief. (*Klein* v. *Insurance Co.,* 104 U. S. 88, 91, 26 L. Ed. 662; *New York Life Ins. Co.* v. *Statham,* 93 U. S. 24, 30, 31, 23 L. Ed. 789; *Pilot Life Ins. Co.* v. *Owen,* (4 Cir.) 31 Fed. (2d) 862, 866.) And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles." (*Bergholm* v.

*Peoria Life Ins. Co.,* 284 U. S. 489, 52 Sup. Ct. 230, 231, 76 L. Ed. 416.)

Defendant has asked for reversal and a new trial only. It may be that on a new trial deficiency in the evidence may be supplied, and assuming that such a possibility exists, the cause will be remanded for that purpose. On the new trial the essential evidence to justify recovery under the policy is indicated by this opinion.

On the question of the change of beneficiary it is our view that Skulason's authority to request such change need not be in writing. Section 7519, Revised Codes, we think applies to matters required by the statute of frauds to be in writing, not to private contracts where parties have stipulated that certain things shall be in writing. (*Sunburst Oil & Gas Co.* v. *Neville,* 79 Mont. 550, 257 Pac. 1016; 2 Am. Jur., sec. 91.)

Skulason's testimony is vital in any further proceedings in the matter, as his power to act for Stokke in any matter involved in the action at bar, and proof of disability, as heretofore stated, has not been made. Proof made now must be supported by such reasons as can be furnished, as to why it was not furnished within the time specified by the policy. We think that reasonable grounds for the delay may be provided, but they must be well supported by evidence of inability to furnish such proof at an earlier date.

The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE STEWART concur in the result reached in the opinion of MR. JUSTICE MORRIS.

MR. JUSTICE ANGSTMAN Dissenting:

The trial court took the view that, since the policy of insurance was admitted without objection, except the general objection to the sufficiency of the complaint, the complaint would be deemed amended to conform to the proof and findings. Whether this view is correct under the facts here is unimpor-

tant. In considering the propriety of the court's conclusion that the policy was in effect at the time of Stokke's death, I will assume that the court was not warranted in deciding the case against defendant on a theory different from that relied upon in the pleadings, if the ground upon which he decided the case be capable of explanation consistent with no liability.

This makes it necessary to ascertain whether, if defendant is given opportunity to do so, it can show anything that would defeat its liability on the theory adopted by the trial court. To answer this question makes it necessary to examine the terms of the policy. So far as applicable here, it is sufficient to say that the policy contains provisions for indemnity in case of bodily injuries through external, violent and accidental means, resulting in certain disabilities which provisions need not be specifically pointed out here. It then provides for sickness indemnities. The policy in this connection provides as follows:

"(A) If affirmative proofs be furnished the Company that the Insured has suffered from any sickness or disease contracted during the continuance of this insurance, whereby he has been totally disabled for one year and will continue to be permanently unable to engage in any occupation for wages or profit, and such sickness or disease has not resulted in death but that solely and independently of any other cause, has resulted in the entire and irrecoverable loss of sight of both eyes or permanent paralysis or insanity as below specified, he shall be entitled to one of the following benefits.

Entire loss of sight of both eyes......................$1,250
Paralysis of both hands.............................. 1,250
Paralysis of both feet...,............................ 1,250
Paralysis on one hand and one foot................... 1,250
Insanity ........................................ 1,250

"Provided that either or any of the indemnities payable as last above provided shall be inclusive of any other payments on account of the same sickness or disease, and shall not exceed one-half the principal sum.

"Monthly indemnity, total loss of time $100

"(B) If proofs as above show such sickness or disease not to have caused loss of sight or paralysis of members or insanity as stated in clause 'A' but that the Insured has thereby been totally disabled for not less than seven consecutive days, and on account of which he could perform none of the duties of his occupation and been under regular treatment of a licensed physician, then the Company will pay him the amount of the Monthly Indemnity last above stated, for the period of such total disability, not exceeding twelve months, and not extending beyond the time of death. After payment of monthly indemnity for twelve months as aforesaid, the Company will continue payment of such monthly indemnity thereafter, so long as the Insured during life shall be wholly and continuously disabled by such disease from engaging in any occupation or employment for wage or profit."

It is under subdivision (B) that the trial court found there was more due to the insured than the amount of his quarterly premium due on September 7, the day before he died, which should have been applied in payment of the premiums due, and hence that the policy was in effect at the time of the insured's death. The proof in the record by stipulation is that Stokke was in the hospital continuously from the 10th day of August, 1932, to September 8, 1932, was under the care of a physician and that he was sick and disabled all of that time. The defendant contends that this proof is not sufficient to show liability under subdivision (B) of the policy without proof that the sickness was contracted during the continuance of the policy as provided in subdivision (A). The evidence amply supports the conclusion that the sickness was contracted during the continuance of the policy of insurance. If the sickness had been contracted before the policy was issued, it never would have been issued. Defendant could not now assert that the policy was never a valid one because it admits in its answer that the policy insured the life of Stokke upon the terms contained in it.

Defendant further contends that it is not shown that such sickness has not resulted in death, within the provisions of sub-

division (A). That limitation, however, has to do only with injuries specified in subdivision (A), and has no application to sickness for which indemnity is allowed under subdivision (B). If this were not so, then the insured here could never have obtained monthly indemnity no matter how long his sickness continued, because he would have been obliged to wait to see whether the sickness resulted in his death. Such an interpretation of the contract is not warranted.

The other provisions of subdivision (A) also have application only to the disabilities particularly covered in subdivision (A), and do not apply to subdivision (B). Nor do I think it will avail the defendant to assert that the insured failed to prove that the sickness did not cause loss of sight or paralysis of members or insanity, as stated in clause (A). If the sickness did produce loss of sight, paralysis of members or insanity, then defendant instead of being relieved of the duty of paying monthly indemnity would have been obliged to pay much more namely the sums specified in subdivision (A).

Defendant also contends that it should have opportunity to show if it can that Stokke was suffering from an ailment not covered by the policy. The policy contains a clause which exempts the company from certain risks, which reads as follows: "Risks not assumed. Suicide, or any loss or disability resulting from an attempt thereat, whether sane or insane, or loss or disability resulting from the insured having participated in a submarine expedition or any aerial flight (except as provided elsewhere herein under (Aviation Coverage), or caused directly or indirectly, wholly or partly by war, riot or insurrection or any act incident thereto, either on land or water, or from violation of criminal law, or from military or naval service of any kind or police duty in any military, naval or political organization, are all risks not assumed under this supplemental contract."

The stipulation above referred to, to the effect that Stokke was sick, shows that this case does not fall within the clause that relieves the company from certain risks. "Sick" usually means affected with disease, ill, indisposed. (*State* v. *Douglas*, 124

Kan. 482, 260 Pac. 655.) A contract allowing benefits to one "who is sick and unable to work" has been held not to apply to material illness following the breaking of a leg; sickness being disabilities which are the natural results of disease arising from a pathological condition. (*Beaudoin* v. *La Societe, etc.*, 116 Me. 428, 102 Atl. 234, L. R. A. 1918B, 641.) Sickness does not generally extend to or include accidental injuries. (*Poole* v. *Imperial Mut. Life etc. Co.*, 188 N. C. 468, 125 S. E. 8, and *Villone* v. *Guardla Perticara*, (Sup.) 114 N. Y. Supp. 801.) It may under certain circumstances include accidental injuries. (*Murray Hospital* v. *Angrove*, 92 Mont. 101, 10 Pac. (2d) 577.) Whether it does or not in any specific instance depends upon the connection in which the term is used and the intention of the parties using it. Here the policy in question made liberal provision for accident indemnities in addition to sickness indemnities. When the parties stipulated that Stokke was sick from August 10 to the date of his death, and disabled during all of that time they doubtless used the word "sick" in contradistinction to the word "accident." In any event, if his ailment was in fact due to an excepted risk, it seems preposterous that able counsel for defendant would not have so pleaded in its answer as a complete defense to any liability under the policy.

Counsel do not now suggest that the ailment from which Stokke died was in fact something excluded from the coverage under the policy. Their only contention is that they should have the opportunity to so show.

I am not disposed to believe that counsel for the insurer would have stipulated that Stokke was sick during the time in question if in fact he were suffering from one of the unassumed risks as defined in the policy.

Defendant also contends that because of the supposed change of theory between the pleadings and the findings it was not given the opportunity to show, if such were the fact, that because of other insurance carried by the insured it would only be liable for a pro rata share of the loss. No claim is made that the insured carried any other insurance. If he did, defendant

would doubtless have so pleaded as a partial defense to this action on its merits.

Defendant's counsel, in their brief, suggest the probability that plaintiff prior to bringing action had canvassed the possibility of resting his complaint upon the theory adopted by the trial court, but discovered that defendant had a perfect defense thereto. Such a probability cannot be indulged under the record here. Here it is alleged in the complaint that plaintiff demanded the return of the policy of insurance to her, but that defendant fails, neglects and refuses to do so and that by reason thereof plaintiff is unable to state all of the provisions of the policy. Defendant, by its answer, admits that plaintiff demanded that defendant give the policy to plaintiff and that it refused to do so. Under these facts it is a more reasonable probability that if defendant had either a complete or partial defense under the policy if would have pleaded it in its answer.

There is no defense that might be asserted by the defendant company under the admitted facts here that would relieve it of the obligation to pay the monthly indemnity specified in subdivision (B).

The trial court's ruling was justified for another reason. Analysis of the pleadings discloses that defendant was put on notice that plaintiff was relying on the policy of insurance in its entirety.

The complaint in paragraph 3 contained these allegations: "That during all of the times mentioned herein, the said policy of insurance No. 132113–5Q was in full force and effect and that it was never cancelled or forfeited, nor was said Stokke in default in any of the premiums to be paid by him or any of the other conditions therein required to be performed by him." This was a proper plea of performance of all conditions required of the insured under the contract. (Sec. 9170, Rev. Codes.)

The complaint also alleged the waiver of premium due to the physical, total and permanent disability of Stokke after August 10, 1932. Defendant, by its affirmative defense, alleged in substance that Stokke had not paid the premium of $55.50 due on

August 7, 1932, or within the grace period thereafter, and that by reason thereof the policy terminated and all of the rights and privileges of the insured ceased and terminated before his death. By her reply plaintiff admits that by the terms of the policy the insured was required to pay $55.50 as a premium within 31 days after August 7, 1932, unless he "was excused from such payment under the provisions of said policy, and alleges the fact to be that under said policy as a whole and all of its provisions he was not required so to do." The reply thus put defendant on notice that plaintiff was relying upon the whole of the policy and all of its provisions. The reply was not a departure from the complaint but was consistent with that part of paragraph 3 of the complaint above quoted. Defendant might have required plaintiff to make her reply more definite and certain, but no attempt was made so to do. Defendant was thus put on notice that the entire policy of insurance was relied upon by plaintiff.

The policy contains this special provision: "Any indebtedness to the company on account of this policy and any unpaid portion of the premium for the insurance year in which the death of the insured occurs will be deducted in any settlement hereunder." Also subdivision 18 of the Standard Provisions provides: "Upon the payment of claim hereunder any premium then due and unpaid or covered by any note or written order may be deducted therefrom." Defendant was advised by the allegation of total disability that it must defend against whatever consequences such disability produced under the policy, particularly where, as here, it was expressly stipulated that the disability was due to sickness.

The court was warranted under the facts here to find that the policy was in effect at the time of the death of Stokke by reason of the fact that sickness indemnities under the admitted facts more than offset the amount of premium due under the policy. (*Birlew* v. *Mutual Ben. Health & Acc. Assn.*, 53 Idaho, 472, 24 Pac. (2d) 677; *Pfeiffer* v. *Missouri etc. Co.*, 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; *Equitable Life Assur. Soc. of U. S.* v. *Pettid*, 40 Ariz. 239, 11 Pac. (2d) 833; *Washington Nat. Ins.*

*Co.* v. *Dukes,* 53 Ga. App. 293, 185 S. E. 599; *American Nat. Ins. Co.* v. *Foster,* (Tex. Civ. App.) 108 S. W. (2d) 689; *Benefit Assn. Ry. Employees* v. *Bray,* 226 Ala. 444, 147 So. 640; *Carter* v. *Washington Fidelity etc. Co.,* 10 La. App. 14, 120 So. 424; *Olezene* v. *Eagle Life Ins. Co.,* 11 La. App. 153, 121 So. 881.; *Inter-Ocean Casualty Co.* v. *Copeland,* 184 Ark. 648, 43 S. W. (2d) 65; *Ruderman* v. *Massachusetts Acc. Co.,* 120 N. J. Eq. 251, 184 Atl. 520.)

In *Long* v. *Monarch Acc. Ins. Co.,* (4 Cir.) 30 Fed. (2d) 929, the court read into the general rule a qualification to the effect that before this rule applies the money must be absolutely due by the insurer to the insured and held in effect that this condition did not obtain until such time as the insurer admitted its liability after conducting such investigation as it might see fit. I agree that the rule has no application unless the money is absolutely due from the insurer to the insured, but I cannot agree with the view that whether it is due or not must await the insurer's admission of liability, or is dependent upon lapse of time for investigation. Investigation, of course, can be made but when it shows liability, that liability dates back to the period when the insured was disabled because of sickness. And it is of no consequence that proof of loss was not made until after the premiums were past due, and where were it not for the application of funds due to the insured the policy would have lapsed. (*Birlew* v. *Mutual Benefit H. & A. Assn.,* 53 Idaho, 472, 24 Pac. (2d) 677; *Mid-Continent Life Ins. Co.* v. *Harrison,* 175 Okl. 543, 53 Pac. (2d) 266), particularly where, as here, notice of sickness was given before the lapsing of the grace period.

Was there compliance with the terms of the policy relative to giving notice of sickness and proof of loss? The telegram which was received by defendant on September 7 and before the expiration of the grace period stated, "Bertel M. Stokke disabled in hospital letter today." The letter written that day but not received until after expiration of the grace period advised defendant that Stokke was sick in the hospital and under the care of a doctor. It specifically advised defendant to pay the pre-

mium due out of moneys due him under the policy. This telegram and letter constituted notice and proof of loss, respectively.

Under our statute proof of loss need not be in such form as would be necessary in a court of justice. (Sec. 8143, Rev. Codes; *Da Rin* v. *Casualty Co. of America*, 41 Mont. 175, 108 Pac. 649, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164; *Wick* v. *Western Life & Casualty Co.*, 60 Mont. 553, 199 Pac. 272; *Caldwell* v. *Wash. etc. Co.*, 94 Mont. 431, 23 Pac. (2d) 257.)

Section 4 (C) of the Standard Provisions of the policy requires notice of sickness within ten days after the commencement of disability from such sickness. It also provides: "Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as reasonably possible." The failure to give this notice within ten days after the commencement of disability does not forfeit the whole claim but at most only that part that had accrued up to ten days prior to the notice to the insurer. (*Barron* v. *Equitable Life Assur. Soc.*, 197 Minn. 367, 266 N. W. 845.)

The notice here given was at least ample to establish a claim accruing for the ten day period prior to giving it. That would establish a claim for about $33. After insured's death there was no occasion to apply any of the amount due to the insured in payment of premiums to keep the policy alive thereafter. At the death of the insured, the policy matured if in fact it did not do so at the time he became disabled because of sickness. (Compare *Mid-Continent Life Ins. Co.* v. *Harrison*, supra.) The insurer, after the death of the insured, had the right under the policy to deduct from the amount due under the policy the unpaid portion of the premium for the insurance year in which the death occurred.

The insured's death on September 8 left only 1 month and 1 day for which the insured was in arrears on his premiums if we eliminate the grace period. The monthly premium would have been about $20. Hence, there was more due to the insured from

defendant on September 7, the date when it was notified of his sickness, and on September 8 when insured died than the amount of premiums earned up to the time of his death.

The fact that proof of the loss and investigation had to be made after death and after the premium was past due rather than before does not alter the conclusion that this sum was absolutely due and payable on September 7, the last day allowed for the payment of the premium, and this should be applied to keep the policy alive. Nor is it necessary that the mechanical act of making application of the sum due to insured, should have been done before the death of the insured or before the time when the premium was due. Justice and fair dealing require that to be done now to prevent the lapse of the policy. Had Stokke survived his illness, I have no doubt defendant would have applied his disability benefits to keep the policy in effect. This court ought not permit defendant to escape its obligation to the insured on the assertion that it had not investigated the claim for sickness benefits before the lapse of the grace period. I think the trial court properly held that sick benefits should be applied in payment of the premium and that the policy was in effect at the time of Stokke's death.

Was there a change in beneficiary? As above noted, Stokke caused the letter to be written by Skulason to the company requesting the change and forwarding the policy to the company. It was stipulated in the record that in doing so "Skulason was acting for Mr. Stokke at Mr. Stokke's request." A somewhat similar case is that of *Bell* v. *Criviansky*, 98 Mont. 109, 37 Pac. (2d) 673, 678. In that case after reviewing a number of authorities, some of which held that the change of beneficiary was consummated under facts less conclusive than those here, the court announced the true rule as follows: "We think the true rule is that, if the insured has pursued the course pointed out by the laws of the association and has done all in his power, under the facts and circumstances of the case, to change the beneficiary, but before the new certificate is actually issued or the change of beneficiary is indorsed on the old, he dies, a court

of equity will decree that to be done which ought to be done, and act as though the certificate had been issued or the indorsement made."

The contract provides such change may be made only in writing, and the defendant contests the change because this part of the contract was not complied with, and the insurer has a right to have this provision of the contract substantially complied with. On the same question the intervener argues that when an act is required to be in writing, if done by an agent, his authority must likewise be in writing. This contention, I think, is unsound. Section 7939, Revised Codes provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." This provision of the Codes applies to acts required by express statutes to be in writing, such as the statute of frauds, section 7519, Revised Codes, not to private contracts, where the parties have stipulated certain things shall be in writing. (See, also, *Sunburst Oil & Gas Co.* v. *Neville*, 79 Mont. 550, 562, 257 Pac. 1016.)

Skulason could have been authorized verbally to request the defendant to change the beneficiary. This the agreed facts show was done. The case falls within the rule announced, and within the authorities relied upon, in the *Bell Case*.

I think the judgment should be affirmed.

Mr. Justice Erickson concurs in the above dissenting opinion of Mr. Justice Angstman.

Rehearing denied July 15, 1939.